794 P.2d 361
**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Roberto GONZALES,**
**Defendant–Appellant.**

**No. 10736.**

Court of Appeals of New Mexico.

March 27, 1990.

Certiorari Granted May 8, 1990.

midt also testified that during the chase he got a good look at the driver as the truck came toward him. Waldschmidt followed the truck until the driver abandoned it. Waldschmidt obtained the license number on the truck and reported it to the police. The police traced the number and determined that the truck was owned by Roberta Gonzales, defendant's daughter. Later, Waldschmidt positively identified defendant from a photo array.

Defendant admitted using the truck on the day of the crime. He testified that he was with three friends drinking beer in a lounge parking lot from around 10:00 a.m. until around 1:00 or 2:00 p.m., when a police officer came by and told them they could not drink there. Subsequently, defendant said that he and his friends moved across the street to where one of his friends lived and continued drinking until around 5:00 p.m. Defendant named the friends: Felipe Silva, Stevie Griego, and Frank Flores. Apparently Stevie Griego's name is actually Stevie Romero. Defendant testified that when he left his friend's house, the truck was no longer where he had parked it and, thinking that his daughter had picked it up, he went home.

Hal Stratton, Atty. Gen. and William McEuen, Asst. Atty. Gen. Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender and Jonathan A. Abbott, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Judge.

Convicted of larceny and conspiracy to commit larceny, defendant appeals. The issues on appeal are (1) whether defendant was denied due process of law by a delay of eighteen months between the date he was arrested and the date of indictment; (2) whether the district court erred in reconsidering its initial decision to grant defendant's motion to dismiss; and (3) whether in reconsidering the initial decision, the district court erred in reviewing the contents of a calendar notice issued by this court in another case. *See* SCRA 1986, 12–210. We affirm.

BACKGROUND.

On February 17, 1986, around 3:30 p.m., four tires were taken from a tire store. The manager, John Waldschmidt, testified that he chased the two thieves, who sped away in a green pickup truck. Waldsch-

On February 19, 1986, Gonzales was arrested. The arresting officer, Officer Calderon, testified that around the time of the arrest, Gonzales told him that he was with Felipe Silva and a person named Dan. This information was noted in the police report. The next day, after being incarcerated for less than twenty-four hours, defendant was released pending investigation.

Defendant was indicted on August 13, 1987. On October 28, 1987, the district court heard defendant's motion to dismiss based on prejudicial preindictment delay. Defendant testified at the hearing that all three of his friends had died. Felipe Silva died in February 1987, approximately one year after defendant's arrest, and Stevie Romero died three months later. No date was given for Frank Flores' death. After the hearing, the court dismissed the indictment with prejudice on the basis of the sixth amendment right to a speedy trial.

See State v. Kilpatrick, 104 N.M. 441, 722 P.2d 692 (Ct.App.1986).

The state submitted a timely motion to reconsider, to which it attached a calendar notice from this court proposing summary reversal in State v. Fimple, Ct.App. No. 10,280 (Filed January 7, 1988), which involved similar facts. The summary calendar notice proposed summary reversal on the basis that sixth amendment speedy trial rights are not triggered solely by arrest. See also State v. Sanchez, 108 N.M. 206, 769 P.2d 1297 (Ct.App.1989). On December 18, 1987, the district court entered an order granting the state's motion. Subsequently, in March, the court entered an order setting the case for trial. Following his conviction, defendant filed a timely notice of appeal.

## 1. DENIAL OF DUE PROCESS.

Defendant has abandoned his sixth amendment argument. See id. Rather, he relies on his rights to due process. See United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Defendant argues that he was denied due process by the preindictment delay because his alibi witnesses all died prior to the date he was indicted, and the reasons advanced by the state for the preindictment delay are insufficient to outweigh the prejudice caused by the delay. See United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); United States v. Marion. The state argues that defendant has argued for the wrong test and that the test he advances is essentially the same test as the speedy trial inquiry under the sixth amendment. Thus, we first discuss the question of what is the relevant test.

### a. The Relevant Test.

■ Although defendant cited to the relevant provisions in both federal and state constitutions, we do not understand his claim to be that the New Mexico state constitution should be interpreted to provide greater rights than are available under the federal constitution. Indeed, our supreme court has indicated that the issue of whether defendant has been denied his right to due process under the fourteenth amendment of the United States Constitution and the New Mexico Constitution, article II, Section 18 by reason of preindictment delay involves the same test. See State v. Duran, 91 N.M. 756, 581 P.2d 19 (1978). This court is bound by state supreme court precedent. See Alexander v. Delgado, 84 N.M. 717, 507 P.2d 778 (1973). Thus, we apply a single due process test under both constitutional provisions.

The test to which Duran refers arises out of Marion. In Marion, the Supreme Court apparently articulated a stringent test: the Due Process Clause of the fifth amendment would require dismissal of the indictment if it were shown at trial that the preindictment delay caused substantial prejudice to the defendant's rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. See A. Lite, The Pre–Accusation Delay Dilemma, 10 Seton Hall L.Rev. 539 (1980). Subsequently, in Lovasco, the Court expressed the Marion due process inquiry by stating that courts are required to consider the reasons for the delay as well as prejudice to the accused.

In Lovasco, the Court held that the defendant must demonstrate actual prejudice. The reason for delay in Lovasco was the government's ongoing investigation, which the Court held was legitimate. The Court noted that investigative delay is fundamentally different from delay which is undertaken by the government solely to gain a tactical advantage. From the opinion it is difficult to ascertain whether the Court intended to state a conjunctive test in which prejudice and intentional delay to gain a tactical advantage are the two components or whether the Court compared investigative delay to bad faith delay for another reason. Consequently, Marion and Lovasco left unclear whether the two elements, actual prejudice and intentional delay by the government for an improper purpose, are to be applied in a conjunctive or a disjunctive manner. See generally United States v. Mays, 549 F.2d 670 (9th Cir.1977) (comparing the textual arguments in support of the conjunctive, as well as the

disjunctive, interpretation of *Marion* ). Subsequent discussion in recent cases by the Supreme Court on the subject, however, lends some support to the view that the present court favors a conjunctive two-prong test. *United States v. Gouveia,* 467 U.S. 180, 192, 104 S.Ct. 2292, 2299–300, 81 L.Ed.2d 146, 156–57 (1984); *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), however, the Court rejected the government's argument that the *Lovasco* rationale was applicable to an analysis of the government's delay in filing a civil proceeding for forfeiture of currency and stated that *"Lovasco* recognized that the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure that an indictment is well founded." *Id.* at 563, 103 S.Ct. at 2011–12, 76 L.Ed.2d at 152.

For a period of time, there was uncertainty at the level of the federal courts of appeal. *See generally* Lite, *supra,* at 541–53.

> Some circuits have read the *Marion* test conjunctively, determining that a dismissal is authorized on due process grounds upon a showing by the defendant of actual prejudice to his defense *and* that the government's purpose for the delay was to gain an unfair tactical advantage. Other circuits which have applied the *Marion* test disjunctively, that is, as requiring either substantial actual prejudice *or* intentional governmental delay to gain a tactical advantage, have adopted a balancing approach similar to the *Barker [v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ] test, in which courts weigh three factors—the length of the delay, actual resultant prejudice to the defendant, and the government's reasons for the delay. [Emphasis in original; footnote omitted.]

*Id.* at 549–50.

Many federal courts of appeal now appear to apply a conjunctive, two-prong test in which the defendant must prove the government's intentional delay to gain a tactical advantage as well as prejudice. *See, e.g., United States v. Benson,* 846 F.2d 1338 (11th Cir.1988); *United States v. Comosona,* 848 F.2d 1110 (10th Cir.1988); *United States v. Ismaili,* 828 F.2d 153 (3rd Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988); *United States v. Lebron–Gonzalez,* 816 F.2d 823 (1st Cir.), *cert. denied,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987); *United States v. Duncan,* 763 F.2d 220 (6th Cir. 1985).

The Seventh Circuit has recognized that it has advanced both approaches to the *Marion* test. *United States v. Williams,* 738 F.2d 172 (7th Cir.1984). The balancing test was accepted in *United States v. King,* 593 F.2d 269 (7th Cir.1979). However, the Seventh Circuit in *United States v. Antonino,* 830 F.2d 798 (7th Cir.1987) set forth the conjunctive two-part test.

It is unclear which test the Fifth Circuit has adopted. *See United States v. Johnson,* 802 F.2d 833 (5th Cir.1986). In that case, the court states the conjunctive test but also relies on the test set forth in *United States v. Shaw,* 555 F.2d 1295 (5th Cir.1977). In *Shaw,* the court set forth factors to be considered to establish actual prejudice. The *Johnson* court did not specifically mention balancing as set forth in *United States v. Townley,* 665 F.2d 579 (5th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982), but *Townley* has not been overruled.

■ Our research indicates that only one circuit definitely applies the balancing test. In the Ninth Circuit, intent is not an essential factor in determining whether preindictment delay has violated due process. *United States v. Moran,* 759 F.2d 777 (9th Cir.1985), *cert. denied,* 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986); *see also United States v. Wallace,* 848 F.2d 1464 (9th Cir.1988).

The New Mexico courts have dealt with the due process issue in several preindictment delay cases. *State v. Duran; State v. Lewis,* 107 N.M. 182, 754 P.2d 853 (Ct.

App.1988); *State v. Grissom*, 106 N.M. 555, 746 P.2d 661 (Ct.App.1987); *State v. Jojola*, 89 N.M. 489, 553 P.2d 1296 (Ct.App. 1976). In *Jojola*, this court quoted the portion of *Marion* which discussed the bad faith prong of the two-prong test. *State v. Jojola*, 89 N.M. at 490, 553 P.2d at 1297. However, this court interpreted *Marion* to mean:

1. A showing of substantial prejudice is required before one can obtain a dismissal for pre-indictment delay. 2. The elapsed time, in itself, does not determine whether prejudice has resulted from the delay. 3. Substantial prejudice may not exist even when actual prejudice is shown; every delay-caused detriment does not amount to substantial prejudice. 4. Where actual prejudice is shown, *the actual prejudice must be balanced against the reasons for the delay* in determining whether a defendant has been substantially prejudiced. [Emphasis added.]

*Id.* at 490, 553 P.2d at 1297.

Thus, the *Jojola* court referred to *Marion* as requiring a balancing of prejudice shown by the defendant against the reasons for delay advanced by the state. However, because the defendant failed to show how he was actually prejudiced by the delay, the court did not engage in any balancing.

In *Duran*, the supreme court quoted the four factors from *Jojola*. *State v. Duran*, 91 N.M. at 757, 581 P.2d at 20. The court recognized that these factors reflected this court's interpretation of *Marion*. *Id.* The court did not mention the two-prong test, and it did not engage in balancing, because the defendant did not establish actual prejudice.

This court in *Grissom* stated that "[w]here there has been a showing of actual prejudice, the court must then balance the prosecution's conduct against actual prejudice ensuing to defendant to determine if these factors amount to 'substantial' prejudice to defendant." *Id.* 106 N.M. at 565, 746 P.2d at 671. Again, this court held that the defendants had not met their burden of showing how they were preju-

diced. Thus, it was not necessary to engage in balancing.

More recently, this court in *Lewis* stated: "In reviewing a claim of prejudice, the trial court and this court on appeal, must balance defendant's showing of prejudice against the reasonableness of the conduct of the police...." *Id.* 107 N.M. at 185, 754 P.2d at 856. Again, it set forth the four *Jojola* factors. However, this court also stated that "[t]he Due Process Clause requires dismissal of the charges if it is shown that the preindictment delay caused substantial prejudice to defendant's rights to a fair trial, and the delay was an intentional device to gain tactical advantage over the accused." *Id.* at 184, 754 P.2d at 855.

Thus, at least two different due process analyses for preindictment delay exist. One analysis employs a conjunctive, two-prong test requiring a defendant to prove (1) prejudice, and also (2) an intentional delay by the state to gain a tactical advantage. This approach finds support in a number of federal cases, and perhaps in language used in one New Mexico opinion. The second analysis employs a balancing test, under which the defendent is required first to prove prejudice and second to show that the prejudice proved outweighs the importance of the state's reasons for the delay. Language in several New Mexico cases favors the second approach, but it is dictum, since no actual prejudice was shown.

The state urges this court to adopt a conjunctive, two-prong test. The state argues that any other decision makes the speedy trial inquiry under the sixth amendment and the due process inquiry under the fifth amendment difficult to distinguish. The state notes that the Due Process Clause has a limited role to play in protecting against oppressive delay. *See United States v. Lovasco.* It argues that the first analytic approach recognizes the most appropriate role for the Due Process Clause in evaluating preindictment delay.

A recent United States Supreme Court decision, *Dowling v. United States*, —— U.S. ——, 110 S.Ct. 668, 107 L.Ed.2d 708

(1990), supports the state's argument that the Due Process Clause plays a limited role. There, the Supreme Court noted, "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.* at ——, 110 S.Ct. at 674, 107 L.Ed.2d at 720. In *Dowling,* the Court declined to use the Due Process Clause "as a device for extending the double jeopardy protection to cases where it otherwise would not extend." *Id.*

Defendant, on the other hand, urges this court to weigh the prejudice to defendant against the reasons for the state's delay. Defendant contends that the Due Process Clause protects community standards of justice and that the rule for which the state contends ineffectively protects that interest. He urges us to continue to apply the balancing test this court adopted in *Jojola.*

Defendant in effect contends that the flexibility of the balancing approach best serves the interests generally advanced by the Due Process Clause. The balancing test permits a court to recognize the importance of particular facts to an ultimate judgment about community standards of justice. The balancing test might be viewed as more consistent with the language as a whole employed by the Court in *Marion.* "To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." 404 U.S. at 325, 92 S.Ct. at 465–66, 30 L.Ed.2d at 481. The fact that the Due Process Clause has a limited role to play in protecting against preindictment delay does not in itself support a decision to abandon the balancing test.

As the Ninth Circuit has noted, protection from lost testimony "generally falls solely within the ambit of the statute of limitations." *United States v. Moran,* 759 F.2d at 782. Further, in applying the balancing test, there must be "some showing of governmental culpability to prove a deprivation of due process." *Id.* at 783. "If mere negligent conduct by the prosecutors is asserted, then obviously the delay and/or prejudice suffered by the defendant will have to be greater than that in cases where recklessness or intentional governmental conduct is alleged." *Id.* at 782. Finally,

> After making the balancing determination, a pre-indictment delay will be permissible unless it violates fundamental conceptions of justice which lie at the base of our civil and political institutions. *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048. Furthermore, in this area, the due process clause plays a limited role because primary protection is afforded to defendants by the applicable statute of limitations. *Id.* at 789, 97 S.Ct. at 2048.

*Id.* Thus, if properly applied, the balancing test for preindictment delay does not appear to be inconsistent with recognition of a limited role for the due process clause in this area.

In *Marion,* the United States Supreme Court compared the role of state statutes of limitation, the fifth amendment right to due process, and the sixth amendment right to a speedy trial. State statutes of limitation specify a limit beyond which "there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *Id.* 404 U.S. at 322, 92 S.Ct. at 464, 30 L.Ed.2d at 479–80. Consequently, state statutes of limitation perform the function of guarding "against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case." *Id.* at 323, 92 S.Ct. at 465, 30 L.Ed.2d at 480. The fifth amendment Due Process Clause, on the other hand, protects a defendant against actual prejudice caused by preindictment delay. *Id.* at 324, 92 S.Ct. at 465, 30 L.Ed.2d at 481. The sixth amendment speedy trial guarantee primarily protects a defendant against other results of delay and against delay during a particular time frame. The right to a speedy trial is a right to be free from undue and oppressive incarceration prior to trial. The right is intended to minimize anxiety and concern accompanying public accusation, as well as limit the possibilities that long delay will impair a defendant's ability to present an effective defense. *Id.* at 320, 92 S.Ct. at

463, 30 L.Ed.2d at 478. Thus, although the speedy trial guarantee limits the possibilities of prejudice to a defendant's ability to present an effective defense, it does so during the period after public accusation and in the context of a specific right to an early disposition of such an accusation.

Consequently, there are articulable differences between the protection against delay provided by the sixth amendment and the protection provided by the fifth amendment. If applied in light of those purposes, the sixth amendment speedy trial inquiry should be distinguishable from the fifth amendment due process inquiry.

In evaluating the respective arguments advanced by counsel in this case, we are mindful that *Duran* might be understood to have adopted a balancing test set forth in *Jojola,* and that consequently we are obligated to apply that test as supreme court precedent. *See Alexander v. Delgado.* We note, however, that adoption of the test was not necessary to the supreme court's decision in *Duran,* because the court held that the defendant had not established actual prejudice. In fact, no New Mexico appellate court has had to decide what happens in a case of preindictment delay when actual prejudice is shown. When the supreme court indicates approval of a court of appeals decision in dicta, we do not believe this court is precluded from reconsidering its own precedent. *Cf. Alexander v. Delgado.*

However, we see no reason to depart from precedent in this case. A choice between the conjunctive test and the balancing test is not necessary in order to resolve the present appeal. The conjunctive test is not satisfied, because there is no evidence of the state having engaged in bad faith delay to harass defendant or to gain a tactical advantage; and, as indicated below, the facts do not satisfy the balancing test. Further, we are not yet persuaded that the *Jojola* test, properly applied, will yield inappropriate results. For these reasons, we decline the state's invitation to adopt the conjunctive test at this time. Until we are faced with a case in which there is a reason to depart from a

precedent, we will continue to apply it. Therefore, we choose for the time being to apply the *Jojola* test. The next question is how that test applies to the facts of this case.

### b. Application of the Test.

■ In a due process delay case such as this one, this court is required to make an independent review of the record and the law. *See State v. Grissom.* In order to show prejudice, the defendant must first show specifically how his defense might have been more successful. *See State v. Jojola.* Further, the court in *Duran* stated that the defendant must give an account of what the person might say. The court went on to say that the mere possibility that the witnesses might be able to help does not establish actual prejudice. However, prejudice is rarely found, and it is far easier to find cases that illustrate the lack of actual prejudice than cases that recognize actual prejudice, which then must be balanced against the reasons for delay. *United States v. Antonino; see, e.g., United States v. Walker,* 601 F.2d 1051 (9th Cir. 1979); *United States v. Shaw.*

A summary of the elements that must be established to show "actual prejudice" is included in 2 W. LaFave and J. Israel, *Criminal Procedure* Section 18.5, at 428 (1984). "[I]n the case of a lost witness it must be shown that the witness would have been available at an earlier time, would have testified for the defendant, and would have aided the defense." This summary is consistent with the language of *Jojola* and *Duran,* and we adopt it as a statement of the showing defendant was required to make in this case.

In this case, Felipe Silva, whose name was given to the arresting officer as a witness, died one year after the offense. The other witness, who was not named before the motions hearing, died one year and three months after the offense. Thus, if the delay had been less than one year, defendant's testimony indicates that at least two potential witnesses would have been available.

At the motions hearing, defendant, referring to the deaths of his friends, testified:

That even made it worse on me because the people that I knew that would help me, both of them were dead. And then it happened that Steve went asleep with a cigarette, and the place where he stayed burned down, and that was all the people I was with.

This testimony could be construed as showing that the witnesses would have testified for defendant. This testimony also could be construed as showing that the deceased witnesses would have testified that they were drinking with defendant at another location at the time of the crime. The only way of specifically knowing what the witnesses would have said would have been by obtaining prior statements.

Ultimately, the question of actual prejudice for purposes of the balancing test is whether defendant has shown sufficient prejudice to qualify as "actual prejudice." The defendant has a heavy burden to prove that a preindictment delay caused actual prejudice. *United States v. Moran.* Here, we doubt defendant showed enough to support a determination of actual prejudice. *See id.*

We have been unable to locate any case in which a defendant established actual prejudice on the basis of his or her own uncorroborated statements. *See United States v. Mills,* 704 F.2d 1553 (11th Cir. 1983), *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984) (defendant established that the deceased witness had confessed to the murder for which defendant was charged). To the contrary, *Antonino* strongly suggests that actual prejudice for purposes of preindictment delay requires more than the defendant's uncorroborated testimony as to the evidence lost witnesses would have provided. Similarly, in evaluating due process claims based on the loss of evidence, the United States Supreme Court has expressed reluctance to find a violation without plain proof of prejudice, because "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are

unknown and, very often, disputed." *California v. Trombetta,* 467 U.S. 479, 486, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413, 421 (1984). *Accord Arizona v. Youngblood.* In *Lewis,* an undercover agent testified that he was not sure anyone observed the transaction in question; this testimony was contrary to the claims of the defendant that alibi witnesses existed. Here, the evidence that the identified truck belonged to defendant's daughter and that he drove it on the day of the crime, together with Waldschmidt's positive identification of defendant, provides evidence contrary to defendant's claims that the deceased witnesses would have provided alibis. Under these circumstances, the lost evidence did not have the potential to exonerate defendant completely. *Cf. Arizona v. Youngblood.*

We need not decide, however, whether defendant's showing was sufficient to establish actual prejudice within the meaning of the case law. However we characterize that showing, under the balancing test, the court must still balance the conduct of the prosecution against that showing to determine if there has been a violation of due process. *See United States v. Moran.* We see no reason why that balancing cannot occur without resolving the question of whether the prejudice shown meets the level required for actual prejudice. *See id.*

The parties have stipulated that the delay here was due to the district attorney's overcrowded docket. We take that to mean that the delay resulted from a combination of investigative delay and the allocation of manpower and assignment of priorities among investigations.

■ Investigative delay is not unreasonable and does not deprive a defendant of due process, "even if his defense might have been somewhat prejudiced by the lapse of time." *United States v. Lovasco,* 431 U.S. at 796, 97 S.Ct. at 2052, 52 L.Ed.2d at 763. Defendant was released pending investigation. The critical evidence needed to establish the state's case was acquired a short time later when Waldschmidt made his identification. However, we have no indication that the district attorney was aware of any particular risk to defendant's

case caused by delay. Further, the prosecution is entitled to a good deal of leeway in its decision as to the timing of arrests and indictments. *See United States v. Mays.* Here, the problem seems to be one of allocating scarce resources. This case apparently had a low priority because it involved a less serious offense than others for which the district attorney was responsible. We note that the legislature concurred in that assessment by reclassifying the offense of which respondent was convicted to a misdemeanor. *See* NMSA 1978, § 30–16–1 (Cum.Supp.1989).

The Seventh Circuit Court of Appeals has stated that even if the defendant can show actual and substantial prejudice to his defense as a result of the delay, "the indictment will not be dismissed if there was a legitimate reason for the delay." *United States v. L'Allier,* 838 F.2d 234, 238 (7th Cir.1988). Although we do not mean to condone the provision of inadequate resources for prosecution of crime, the limitations on the resources available to the district attorney (unless, perhaps, grossly inadequate) do not constitute, in the context of a due process claim relating to preindictment delay, substantial state "culpability" for the delay that occurred. In view of the strength of the case against defendant, we do not believe that the showing with respect to prejudice outweighs the reasons for the delay. Under these circumstances, we conclude the district court did not err in refusing to dismiss the indictment.

## 2. THE DISTRICT COURT'S AUTHORITY TO RECONSIDER ITS ORDER DISMISSING THE INDICTMENT.

■ The case was dismissed with prejudice on November 16, 1987. The state filed its motion to reconsider on December 16, 1987. Defendant maintains that the district court had no authority to reconsider and reverse its original dismissal. We disagree. Although our rules of criminal procedure do not expressly provide for motions for reconsideration of a judgment of dismissal, the practice appears to be authorized by statute. *See State v. Portillo,* N.M. (Ct.App.1990) (No. 11,155) (Hartz, J.,

concurring in part and dissenting in part).

Under NMSA 1978, Section 39–1–1, the district court retains control of its judgments and decrees for a period of thirty days after entry and for such further time as may be necessary to pass upon and dispose of any motion directed against a judgment or decree. *See Wagner Land & Inv. Co. v. Halderman,* 83 N.M. 628, 495 P.2d 1075 (1972). Under this rule, the district court had jurisdiction to reconsider and reverse its prior decision. *Cf. Scofield v. J.W. Jones Constr. Co.,* 64 N.M. 319, 328 P.2d 389 (1958) (Section 39–1–1, then codified as NMSA 1953, Section 21–9–1, applies only to non-jury cases). When judgment is rendered on a pretrial motion, the section applies because no jury trial is necessary. *See Gilbert v. New Mexico Constr. Co.,* 35 N.M. 262, 295 P. 291 (1930). Although Section 39–1–1 ordinarily is invoked in civil cases, it also applies to criminal proceedings. *See State v. Padilla,* 92 N.M. 19, 582 P.2d 396 (Ct.App.1978).

The United States Supreme Court has recognized that petitions for rehearing by the government are appropriate in criminal cases. *See United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). In *Healy,* the Court recognized that the correction of errors by lower courts could lead to more speedy disposition of criminal cases and relieve appellate courts of an unnecessary burden.

Defendant argues that New Mexico cases hold that the state was *required* to appeal its grievance. *See State v. Doe,* 95 N.M. 90, 619 P.2d 194 (Ct.App.1980); *State v. Santillanes,* 96 N.M. 482, 632 P.2d 359 (Ct.App.1980), *rev'd on other grounds,* 96 N.M. 477, 632 P.2d 354 (1981). These cases, however, *allow* the state the right to appeal its grievances to higher courts, but do not require it. Therefore, on the basis of Section 39–1–1, for the reasons set forth by the Supreme Court in *Healy,* we hold that reconsideration by the trial court was proper. *See also State v. Portillo* (Hartz, J., concurring in part and dissenting in part).

Defendant also argues that the Double Jeopardy Clause forbade reconsideration of the delay issue. U.S. Const. amend. V; N.M. Const. art. II, § 15. Because the federal and the state constitutions are so similar, the court should interpret them in the same way. *State v. Rogers*, 90 N.M. 604, 566 P.2d 1142 (1977). The United States Supreme Court has stated the federal rule in *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The rule is that double jeopardy attaches in a jury trial when the jury is empaneled and sworn. *Id.; see also State v. Rhodes*, 76 N.M. 177, 413 P.2d 214 (1966). Here, the jury had not been empaneled before the dismissal; thus, the Double Jeopardy Clause is not a barrier to the district court's reconsideration of its prior ruling.

Defendant asks this court to analogize the district court's reversal of its dismissal to a decision increasing a valid sentence after it had been imposed. *See State v. Verdugo*, 79 N.M. 765, 449 P.2d 781 (1969); *State v. Baros*, 78 N.M. 623, 435 P.2d 1005 (1968). *Verdugo* and *Baros* held that the district court is without power to set aside a valid sentence once the defendant has begun serving it. We decline to analogize those very different situations. *Cf. People v. Heil*, 71 Ill.2d 458, 17 Ill.Dec. 673, 376 N.E.2d 1002 (1978) (trial court did not err in considering the people's motion to set aside an order dismissing an indictment, even though order of discharge had been executed).

## 3. CONSIDERATION OF A CALENDAR NOTICE ISSUED IN ANOTHER CASE.

Finally, defendant argues that the judgment against him should be reversed because the state improperly attached a notice of proposed summary reversal to its motion to reconsider. Defendant argues that the use of the notice was not harmless error because it resulted in the decision to reinstate the indictment. Defendant relies on SCRA 1986, 12–405(C), which states: "An order, decision or memorandum opinion, because it is unreported and not uniformly available to all parties, shall not be published nor shall it be cited as precedent in any court." In context, it is clear that this rule refers to unpublished orders, decisions, or memorandum opinions that dispose of a case. *See* R. 12–405(B). It does not purport to forbid citation to calendar notices. We note that the calendar notice to which the state referred involved the same district judge and might have come to her attention in the normal course of events within the thirty-day period. It is the present practice of this court to send a copy of the calendar notice to the district court judge who entered the decision appealed. We also note that defendant failed to object to the use of the notice at the time of the hearing. Therefore, defendant failed to preserve any error for appellate review. SCRA 1986, 12–216; *see also Barnett v. Cal M, Inc.*, 79 N.M. 553, 445 P.2d 974 (1968).

Despite the fact that the error was not preserved, we think it is useful to point out that unpublished orders, decisions, or memorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties. Since the parties know the details of the case, such an opinion does not describe at length the context of the issue decided, context which may be of controlling importance in distinguishing the case from similar ones. Consequently, it is inappropriate to cite the disposition as controlling a different case.

It is even less appropriate to cite a calendar notice as controlling authority. A calendar notice is a proposed disposition signed by one judge. It is a preliminary and tentative indication of how a panel might resolve the issues on appeal, but it is no more than that. Further, a calendar notice may propose summary reversal for tactical reasons, in order to elicit more facts from the prevailing party. Thus, it may not indicate the ultimate disposition of the case.

Notwithstanding the foregoing, if counsel concludes that language in a memorandum opinion or calendar notice is persuasive, we see no reason why it cannot be presented to the court for consideration. It would be more appropriate to present the language without reference to its source,

so that the court to which it is presented is asked to consider it on its own merits, rather than as precedent or controlling authority.

 In this case, there is no evidence in the record that the district court believed that the calendar notice controlled its decision. Thus, we assume the court found the analysis contained in the calendar notice persuasive, independently of its source. *See generally Reeves v. Wimberly*, 107 N.M. 231, 755 P.2d 75 (Ct.App.1988) (upon a doubtful record, every presumption is indulged in favor of the correctness and regularity of the trial court's decision). Under those circumstances, no reversible error occurred.

CONCLUSION.

We conclude that the delay in seeking an indictment against defendant did not violate due process. We also conclude that the district court did not err in reconsidering its initial decision. Finally, we conclude defendant has not shown any reversible error in connection with the state's citation to a calendar notice. Therefore, defendant's convictions are affirmed.

IT IS SO ORDERED.

BIVINS, C.J., and HARTZ, J., concur.