This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40799**

**NEW MEXICO ENVIRONMENT DEPARTMENT, SURFACE WATER QUALITY BUREAU,**

      Petitioner-Appellant,

v.

**WATER QUALITY CONTROL COMMISSION,**

      Respondent-Appellee,

**IN THE MATTER OF THE FINAL TOTAL MAXIMUM DAILY LOAD FOR THE UPPER RIO GRANDE WATERSHED.**

**APPEAL FROM THE WATER QUALITY CONTROL COMMISSION**
**David Sypher, Vice-Chair**

Christal Weatherly, Assistant General Counsel
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Robert F. Sánchez, Assistant Attorney General
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**    The New Mexico Environment Department (NMED) appeals the Water Quality Control Commission's (the Commission) order denying its petition to approve the total maximum daily load (TMDL) for the Upper Rio Grande Watershed for final submission to the Environmental Protection Agency (EPA)—which has the ultimate authority to accept or reject proposed TMDLs. *See* 33 U.S.C. § 1313(d)(2) (stating the EPA must approve state's TMDLs). The Commission denied the petition, concluding that it "d[id] not constitute a petition for regulatory change, nor d[id] it otherwise comply with the requirements for the commencement of proposed rulemaking before the Commission." On appeal, NMED points this Court to our Legislature's recent clarification that a TMDL is a planning document rather than a rule or regulation under New Mexico's Water Quality Act (WQA), NMSA 1978, §§ 74-6-1 to -17 (1967, as amended through 2019). Because we agree that a TMDL is not a regulation under the WQA, we dismiss for lack of jurisdiction.

## BACKGROUND

**{2}**    In June 2022, NMED published a Public Notice, fact sheet, and draft of the TMDLs for public comment. The issuance of the draft TMDLs initiated a thirty-day comment period, pursuant to 40 C.F.R. § 130.7(c) (2019) and Section IV of New Mexico's Statewide Water Quality Management Plan and Continuing Planning Process (WQMP-CPP).[1] The Public Notice and draft TMDLs were published on the NMED website, the NMED online calendar, and the NMED public comment portal. Shortly thereafter, NMED's Surface Water Quality Bureau (SWQB) also published an announcement soliciting comment, along with the Public Notice, fact sheet, and draft TMDLs, to its interested-parties list via the GovDelivery email system—which included over 1,900 recipients. The SWQB held two separate community meetings regarding the draft TMDLs—the public comment period closed the following month.

**{3}**    Following this process and its consideration of the public input, NMED filed the petition at issue in this case with the Commission, and requested a hearing to present the final draft of the TMDLs to the Commission for its approval, pursuant to Section 74-6-3(E) and Section IV of the WQMP-CPP. NMED submits TMDLs to the Commission prior to sending to EPA for final approval. Only after approval by EPA, does a TMDL become part of a state's water quality management plan. *See* 33 U.S.C. § 1313(d)(2) (stating EPA must approve state's TMDLs); *see also* 40 C.F.R. § 130.6(c)(1) (2019) (listing TMDLs as an "element" of water quality management plans).

**{4}**    In August 2022, NMED presented the petition to the Commission during a regularly scheduled public meeting. The Commission unanimously voted to grant NMED's request for hearing and scheduled it to take place during the public meeting set for October of that year. Before the end of the meeting, the Commission inquired whether the draft TMDLs should be publicly noticed as a regulatory proposal in light of this Court's decision, in a nonprecedential opinion, holding that that TMDLs are regulations under the WQA. *See Rio Hondo Land & Cattle Co. v. N.M. Water Quality*

---

1The WQMP-CPP outlines New Mexico's procedural process for TMDL development and implementation.

*Control Comm'n* (*Rio Hondo*), A-1-CA-36039, mem. op. ¶¶ 1, 7 (N.M. Ct. App. Nov. 6, 2019) (nonprecedential). The Commission further suggested NMED review that case.

**{5}** During a public meeting held in September, the Commission discussed whether the hearing set for October should proceed if NMED failed to provide the public notice required for a rulemaking procedure. Ultimately, the Commission agreed to revisit the issue and make a final decision regarding whether a rulemaking would be required for the draft TDMLs during the October hearing.

**{6}** In advance of the hearing, NMED submitted the final version of the draft TMDLs, along with a PowerPoint presentation, to the Commission for review in accordance with the required submission timelines set by the Commission. However, during the October meeting, the Commission did not place the hearing on its agenda—nor did it hear NMED's presentation of the draft TMDLs. The Commission discussed our decision in *Rio Hondo*, other options in lieu of rulemaking for TMDLs, the purpose of a rulemaking, the Commission's historical procedures for addressing TMDLs, the impact of a rulemaking requirement on other state agencies, and the possibility of changing the WQA to clarify that TMDLs are planning documents rather than regulations. Ultimately, the Commission delayed the decision on how to move forward with TMDLs until its November public meeting and planned to decide then whether the petition should be denied for failing to follow rulemaking procedures.

**{7}** Finally, during the public meeting held in November, the Commission denied NMED's petition. NMED appeals.

## DISCUSSION

**{8}** This Court is a court of limited jurisdiction. *State ex rel. Dep't of Human Servs. v. Manfre*, 1984-NMCA-135, ¶ 9, 102 N.M. 241, 693 P.2d 1273. As such, we review administrative decisions only "when express legislative authorization specifies a right of direct appeal." *Id.* While neither party raises the issue of subject matter jurisdiction, NMED points out that the Legislature has recently stated that TMDLs are not regulations under the WQA. Based on this legislation, we conclude that this Court lacks jurisdiction to decide the merits of this direct appeal. *See Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300 (noting that "it is incumbent upon the appellate court to raise jurisdiction questions sua sponte when the Court notices them"); *see also In re Doe*, 1975-NMCA-002, ¶ 8, 87 N.M. 170, 531 P.2d 218 ("[L]ack of jurisdiction at any stage of the proceedings is a controlling consideration which must be resolved before going further and an appellate court may raise the question of jurisdiction on its own motion."). For the following reasons, we dismiss.

## I.      Standard of Review

**{9}** To the extent that our review involves statutory interpretation, we review those issues de novo. *See N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105.

## II. This Court Lacks Jurisdiction to Hear This Direct Appeal

**{10}** The Commission's denial of the petition was based exclusively on this Court's unpublished memorandum opinion in *Rio Hondo*, which it asserts is central to this appeal and supports denial of the petition. In *Rio Hondo*, this Court held that the Commission's order adopting a 2016 TMDL for a segment of the Rio Ruidoso constituted a regulation and thus was appealable under Section 74-6-7 of the WQA. *See Rio Hondo*, A-1-CA-36039, mem. op. ¶¶ 1, 7. We caution parties not to rely heavily on nonprecedential opinions. *See State v. Gonzalez*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 (stating unpublished memorandum opinions "are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties"); *see also* Rule 12-405(B) NMRA (stating the rule governing nonprecedential opinions).

**{11}** As an initial matter, we note that the WQA itself does not define "TMDL," nor does it address whether a TMDL is a type of regulation. Since our decision in *Rio Hondo*, the Legislature has provided clarity concerning the nature of TMDLs in an adjacent statutory section to the WQA, also under the Environmental Improvement Act. *See State ex rel. Child., Youth & Fams. Dep't v. Djamila B.*, 2014-NMCA-045, ¶ 10, 322 P.3d 444 (stating "the statute or statutes, whose construction is in question, are to be read in connection with other statutes concerning the same subject matter" (alteration, internal quotation marks, and citation omitted)); s*ee also Sims v. Sims*, 1996-NMSC-078, ¶ 21, 122 N.M. 618, 930 P.2d 153 (stating that a statutory scheme is comprehensive). According to the San Juan Generating Station Facility and Mine Remediation and Restoration Study Act, NMSA 1978, § 74-4H-3 (2023), a TMDL is a type of "planning document" under the WQA—the purpose of which is to "guide future actions and strategies to meet water quality rules or standards."[2] *See* § 74-4H-3(G); *see also* § 74-4H-3(F) (stating that "[p]lanning documents are not rules or standards under the [WQA]"). Therefore, under the plain language of Section 74-4H-3(F),(G), a TMDL is a type of planning document rather than a rule or regulation under the WQA. *See Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (stating "when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation" (text only) (citation omitted)).

---

[2]Federal case law discussing the role of TMDLs within the federal Clean Water Act affirms the characterization of TMDLs in the manner most recently stated by our Legislature. *See City of Arcadia v. EPA*, 411 F.3d 1103, 1105 (9th Cir. 2005) (stating "[a] TMDL is not self-enforcing, but serves as an informational tool or goal for the establishment of further pollution controls"); *Pronsolino v. Nastri*, 291 F.3d 1123, 1129 (9th Cir. 2002) (explaining "TMDLs are primarily informational tools that allow the states to proceed from the identification of waters requiring additional planning to the required plans"); *see also Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 755 (4th Cir. 2019) (acknowledging the Ninth Circuit's characterization of a TMDL as an information tool rather than "a regulatory mandate"). It is well-settled that in the context of the CWA, "TMDLs do not give rise to an independent legal obligation." *Appalachian Voices*, 912 F.3d at 755; *see also Anacostia Riverkeeper, Inc. v. Wheeler*, 404 F. Supp. 3d 160, 165 (D.D.C. 2019) (stating "TMDLs themselves has no self-executing regulatory force[, r]ather they are informational tools used by [s]tate and federal authorities to plan coordinated effort to attain water quality standards").

**{12}** Given the recent clarity provided by the Legislature concerning TMDLs, we conclude that this Court lacks jurisdiction to hear the merits of this appeal. The Commission's denial of proposed planning documents, like the petition in this case, does not fall under one of the circumstances authorizing a direct appeal under the applicable statute. *See* § 74-6-7(A) (authorizing a right of direct appeal to this Court only to "a person who is [(1)] adversely affected by a regulation adopted by the [C]ommission or by a compliance order approved by the [C]omission or [(2)] who participated in a permitting action or appeal of a certification before the [C]ommission and who is adversely affected by such action"). Accordingly, the Legislature has not authorized a direct appeal under the circumstances of this case and we therefore lack jurisdiction to review the Commission's denial of the petition.

**CONCLUSION**

**{13}** For the reasons stated above, we dismiss NMED's appeal for lack of subject matter jurisdiction.

**{14}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**