This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: February 27, 2025**

**No. S-1-SC-39978**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**NOAH DURAN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lucy Solimon, District Judge**

The Law Office of Ryan J. Villa
Richelle Anderson
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Lee Green, Assistant Solicitor General
Michael J. Thomas, Assistant Solicitor General
Santa Fe, NM

for Appellee

**DECISION**

**VARGAS, Justice.**

**{1}** In this direct appeal, we review Defendant Noah Duran's convictions for first-degree murder (felony murder), contrary to NMSA 1978, Section 30-2-1(A)(2) (1994), and other violent offenses arising out of a shooting at North Domingo Baca Park in Albuquerque, New Mexico. Because Defendant was convicted of first-degree murder as a serious youthful offender, he appealed directly to this Court. *See State v. Trujillo,*

2002-NMSC-005, ¶ 9, 131 N.M. 709, 42 P.3d 814 ("We conclude that serious youthful offenders convicted of first-degree murder shall be allowed to invoke this Court's mandatory appellate jurisdiction under Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) [NMRA].").

**{2}**     On appeal, Defendant contends the district court erred in four distinct ways: (1) it improperly denied Defendant's motion to strike or suppress the testimony of Zachary H. (Witness) for the State's alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) it erred in granting Witness use immunity; (3) it erred in refusing to strike certain jurors for cause during voir dire; and (4) it erred in allowing Witness's in- and out-of-court identifications of Defendant. For the reasons that follow, we affirm Defendant's convictions. We further exercise our discretion to resolve Defendant's appeal by non-precedential decision, and thus limit our recitation of the facts accordingly. *See State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 ("[U]npublished orders, decisions, or memorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties. Since the parties know the details of the case, such an opinion does not describe at length the context of the issue decided.").

## I.     DISCUSSION

### A.     Alleged *Brady* Violation

**{3}**     After selection of the jury on the second day of trial, the State informed the district court and Defendant that, three days earlier (one day before the commencement of Defendant's second trial), Witness confessed to lying about two pieces of information during Defendant's first trial. As a result, Defendant moved to suppress or strike Witness's testimony or, in the alternative, to allow additional briefing to address Rule 5-505(A) NMRA. Rule 5-505(A) imposes a continuing duty to disclose upon a party that "discovers additional material . . . which he would [previously] have been under a duty to produce or disclose." The district court denied Defendant's motion and declined additional briefing, in part because Defendant could "fully cross examine [Witness] on the fact that he lied previously during the testimony, . . . [which] put[ Defendant] in a better position than the last trial." On appeal, Defendant abandons his argument under Rule 5-505 and instead argues that the State committed a *Brady* violation and therefore the district court erred in declining to strike Witness's testimony or to grant a continuance. *See Brady*, 373 U.S. at 87 (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

**{4}**     We conclude that Defendant failed to preserve a *Brady* challenge because his argument below was squarely based on the rules of criminal procedure, which is not the same as invoking a *Brady* ruling. *See, e.g.*, *State v. Stevenson*, 2020-NMCA-005, ¶ 17, 455 P.3d 890 (explaining that the defendant's district court motion raising arguments under local rules and the rules of criminal procedure was "not the same as a *Brady* violation and nothing in the motion was sufficient to raise an allegation of a *Brady*

violation"); *see also* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Indeed, the record does not appear to include reference to *Brady*, and the statement of issues before this Court is devoid of a single reference to *Brady*. The sole citation provided by Defendant at oral argument likewise does not support the invocation of a ruling on *Brady*, and we decline to infer such a ruling where the substance of Defendant's motion before the district court does not support it. *See Stevenson*, 2020-NMCA-005, ¶ 16 ("[W]e look to the substance of the motion to determine the actual issue raised."). While an unpreserved *Brady* violation can be reviewed for fundamental error, based on the record before us, we decline to find fundamental error for two reasons. *See id.* ¶ 18 (suggesting that an improperly preserved *Brady* issue may be analyzed for fundamental error). First, Defendant does not explain how the alleged *Brady* violation created an exceptional circumstance that rose to the level of fundamental error. *See State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297 ("Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." (internal quotation marks and citation omitted)). Second, as previously noted, the district court concluded that Witness's confession that he lied in earlier proceedings "put[ Defendant] in a better position than the last trial" because Defendant was able to conduct another interview of Witness and could impeach Witness with his previous lies during cross-examination. Given these facts, we conclude that there are no exceptional circumstances to support the application of fundamental error here.

## B.     Witness Use Immunity

**{5}**     After Witness admitted that he lied in his testimony at a preliminary hearing and at the first trial, the State filed a motion for witness use immunity. The district court orally granted the motion and subsequently issued the following written order:

> [Witness] is granted use and derivative use immunity from prosecution as to the responsive pretrial statements, testimony and evidence he gives at the pretrial interview *and at the trial in this matter* concerning the following issues: (a) The item being stolen as a baggie of cocaine; (b) knowledge and communication with Haley M[.] over social media about his knowledge of this incident. [Witness] must give a truthful pretrial statement and testify truthfully pursuant to Rules 5- 503, 5-116 and 11-413, NMRA, and [*State v. Summerall*, 1986-NMCA-032, 105 N.M. 84, 728 P.2d 835, *rev'd on other grounds*, *State v. Summerall* (hereinafter *Summerall II*), 1986-NMSC-080, 105 N.M. 82, 728 P.2d 833].

Order Compelling Statement and Test. and Granting Use Immunity, *State v. Duran* (hereinafter Immunity Order), D-202-CR-2020-02491, at 2 (2d Jud. Dist. Ct. Sept. 16, 2022) (emphasis added). Under Rule 11-413 NMRA, "Testimony or evidence compelled under an order of immunity . . . may not be used against the person compelled to testify or to produce evidence in any criminal case, except . . . in a prosecution for perjury committed during that testimony."

**{6}** Defendant initially asserted in his brief in chief that "[t]he district court committed a plain error when it granted [Witness] use immunity." However, after the State presented its analysis under the less onerous abuse of discretion standard, Defendant appears to shift to that standard in his reply. *See State v. Ortega*, 2014-NMSC-017, ¶ 7, 327 P.3d 1076 (explaining that this Court ordinarily reviews "a district court's decision to grant witness use immunity for an abuse of discretion"). Ultimately, we need not decide whether the plain error standard applies because Defendant failed to establish he suffered prejudice. Rather than harm Defendant, the testimony that came in under the defective immunity order benefitted Defendant. *See State v. Astorga*, 2015-NMSC-007, ¶¶ 42-43, 343 P.3d 1245 ("When an error is preserved, we review for harmless error. . . . Absent a constitutional violation, we look to whether there is a reasonable probability that the error affected the verdict. [The d]efendant bears the initial burden of demonstrating that he was prejudiced by the error.").

**{7}** We now turn to the merits of Defendant's claim. As we have previously explained, a grant of immunity for testimony at a current trial, as opposed to statements made prior to trial, is contrary to law. *See Summerall II*, 1986-NMSC-080, ¶ 2 (holding that a district court cannot grant a witness immunity for testimony in a current trial—only for perjury committed in the past). We conclude that the district court's grant of immunity was defective because it granted Witness immunity not only for statements made prior to trial but also for testimony given "at the trial in this matter." Immunity Order 2. However, as was the case in *Summerall II*, Defendant experienced no prejudice because the testimony Witness gave under the defective immunity order was exculpatory. *See Summerall II*, 1986-NMSC-080, ¶ 5 (concluding that "subsequent testimony under that [defective] grant of immunity was not prejudicial").

**{8}** The district court granted immunity in relevant part as to Witness's "knowledge and communication with Haley M[.] over social media about his knowledge of this incident." Immunity Order 2. It was undisputed at trial that Defendant shot Elijah Mirabal (Decedent). The State's theory was that the shooting occurred after Defendant attempted to rob Decedent. Defendant's theory was that he shot Decedent in self-defense after a drug deal "gone bad." Witness's testimony under the grant of immunity supported, rather than prejudiced, Defendant's theory of self-defense because it included a statement Witness made to Haley M. that the shooting arose out of a drug deal gone bad, in direct contrast with the State's theory that the altercation began when Defendant attempted to commit a robbery. Because Witness's testimony given under the grant of immunity was exculpatory and Defendant fails to establish that the testimony was prejudicial when considered as a whole, we conclude that the defective grant of use immunity was harmless and does not warrant relief. *See, e.g.*, *id.* (concluding that, absent prejudice, "no plain error occurred"); *cf. Astorga*, 2015-NMSC-007, ¶¶ 43-44 (explaining that any potential error was harmless because there was no prejudice).

## C. Voir Dire

**{9}** At trial, Defendant moved to strike a number of jurors for cause, asserting that those jurors could not presume Defendant innocent. "Whether a prospective juror

should be excused for cause rests within the sound discretion of the trial court." *State v. Hernandez*, 1993-NMSC-007, ¶ 52, 115 N.M. 6, 846 P.2d 312. And, "[b]ecause the trial judge is in the best position to assess the demeanor and credibility of prospective jurors, we will not disturb [its] ruling absent a manifest error or a clear abuse of that discretion. The burden of establishing an abuse of discretion rests on the moving party." *Id.* (internal citation omitted). On appeal, Defendant relies upon *Fuson v. State*, 1987-NMSC-034, ¶ 11, 105 N.M. 632, 735 P.2d 1138, to support his argument that "[t]here is a presumption of prejudice where, as here, [Defendant] was forced to use his peremptory challenge on a juror" that the district court did not excuse for cause. We are unpersuaded. *Fuson* does not support the application of a presumption of prejudice here because Defendant did not exercise all of his peremptory challenges. 1987-NMSC-034, ¶ 11 ("We hold that prejudice is presumed where . . . a party is compelled to use peremptory challenges on persons who should be excused for cause *and that party exercises all of his or her peremptory challenges* before the court completes the venire." (emphasis added)). We further conclude that Defendant fails to establish actual prejudice. And, even assuming prejudice, it was of Defendant's own making. *See State v. Gurule*, 1972-NMCA-104, ¶ 16, 84 N.M. 142, 500 P.2d 427 ("Even assuming prejudice, it was from defendant's choice not to exercise his remaining peremptory challenge."). Finally, we decline to review Defendant's unclear and undeveloped assertion that the district court erred in refusing to allow Defendant further time to conduct additional voir dire of jurors. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (text only) (citation omitted)).

## D.  Suggestive Identification of Defendant

**{10}**   Witness was released from the hospital the morning after the shooting and taken to the police station for an interview. During this interview, Witness described the alleged shooters, including "their race, hair color, physical stature . . . approximate age, and [provided] detailed clothing descriptions." Order Den. Def.'s Mot. to Suppress His Out of Ct. Identification and Any In-Ct. Identification by Witness, *State v. Duran* (hereinafter Identification Order), D-202-CR-2020-02491, ¶ 23 (2d. Jud. Dist. Ct. Oct. 25, 2021). Later that same day, two detectives went to Witness's residence and showed Witness surveillance video from an urgent care near the location of the shooting. Witness immediately identified the two individuals in the video as the perpetrators involved in the shooting. Defendant filed a motion to suppress Witness's identification of Defendant from the video and any subsequent in-court identification, which the district court denied.

**{11}**   On appeal, Defendant argues that the district court erred in denying his motion to suppress the out-of-court and subsequent in-court identifications. "An order denying suppression of eyewitness identification evidence is reviewed as a mixed question of fact and law, with the Court viewing the facts in the manner most favorable to the prevailing party, and drawing all reasonable inferences in support of the court's decision." *State v. Martinez*, 2021-NMSC-002, ¶ 25, 478 P.3d 880 (internal quotation marks and citation omitted). This Court "review[s] the application of the law to those facts de novo." *Id.* The "burden falls on the accused to establish" that the identification

procedure was suggestive. *Id.* ¶ 80. If the accused is successful, "the burden shifts to the state to prove by clear and convincing evidence *either* that (1) the procedure employed was not so suggestive as to materially taint the identification made by the eyewitness, which is to say that any departure from proper procedure could not have increased the risk of misidentification, *or* (2) good reason existed for the police to employ the suggestive procedure in the first instance." *Id.* We conclude that Defendant provides no persuasive basis to upset the district court's thorough and well-reasoned order denying his motion to suppress.

{12}    The district court followed the burden-shifting framework established by this Court in *Martinez*, concluding that the identification procedure of showing Witness the video was suggestive in nature because it was akin to a showup identification. We agree. *See, e.g.*, *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 21, 130 N.M. 179, 21 P.3d 1032, *overruled on other grounds by Martinez*, 2021-NMSC-002 (explaining that "[s]howup identifications are inherently suggestive and should be avoided" (internal quotation marks and citation omitted)). Even though the identification procedure was suggestive, the district court did not err in denying Defendant's motion to suppress because the procedure was not so suggestive as to materially taint the identification. In making its determination, the district court relied upon Section 29-3B-3 of the Eyewitness Identification Act, NMSA 1978, §§ 29-3B-1 to -4 (2019) (the Act), which aims to enhance the reliability of identification procedures, but does not provide any remedies to potential suspects. *See Martinez*, 2021-NMSC-002, ¶¶ 66-69 (discussing the purpose of the Act, but noting that it "only speaks to the obligations of law enforcement agencies rather than the rights of suspects under investigation and provides no remedy in the event a given identification procedure is not administered in accordance with its requirements"). Although the Act does not specifically identify procedures to enhance the reliability of identification by video, we find certain elements identified by the district court persuasive. *See id.* ¶ 84 (explaining that, while the "Act is well-suited to serve as a litmus test for suggestiveness," the ultimate question of admissibility is one best left for the district court to decide "in the first instance, on a case-by-case basis").

{13}    The district court found in relevant part that Defendant was not restrained or in law enforcement custody in the video, Witness was at home (i.e., a neutral, non-law enforcement location) when he made the identification, the administering detective "told [Witness] that the suspects may or may not be in the video[,] and nothing was odd about [the detective's] tone." Identification Order 18-19; *see also* § 29-3B-3(E)(3), (9), (11) (providing that certain practices increase the reliability of an identification procedure, including removing a suspect's restraints when the suspect is observed by a witness; using a neutral location; stating "that the perpetrator may or may not be in the identification procedure"; and "minimizing factors . . . that influence an eyewitness to identify a suspect . . . , including verbal or nonverbal statements by or reactions from the administrator"). And, perhaps most importantly, Witness had already given a description of the alleged shooters at the interview earlier that day and the administering detective "did not divulge additional information she may have gained from interviews" in the time between Witness's initial interview and when she later showed Witness the video. Identification Order 19; *see also* § 29-3B-3(E)(9) (highlighting the importance of

minimizing any statements from the administrator of the identification procedure that may influence the witness). While the district court compared the identification to a showup identification, the fact that Witness had already given a description before seeing the video is a crucial distinction from a traditional showup where a witness is identifying the alleged perpetrator for the first time. This difference ameliorates concerns about the suggestive nature of a subsequent identification because the witness's previous description provides a point of comparison.

**{14}** Finally, the serious nature of the crime and the detective's uncertainty as to the identities of the individuals involved implicated serious public safety concerns, giving police good reason to employ a suggestive identification procedure to confirm the accuracy of investigatory information as to who committed the crime. *See Martinez*, 2021-NMSC-002, ¶ 61 (explaining that the good reason inquiry "is case specific, turning on such factors as the nature of the crime involved and corresponding concerns for public safety; the need for efficient police investigation in the immediate aftermath of a crime; and the usefulness of prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track" (internal quotation marks and citation omitted)). In light of the detective's uncertainty as to who committed the crime—a shooting at a public park—Defendant's argument that he "presented no concern for public safety" because he had been shot and was in the hospital is unpersuasive.

### E. Cumulative Error

**{15}** Finally, Defendant argues that the cumulative impact of the district court's errors requires reversal. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Carrillo*, 2017-NMSC-023, ¶ 53, 399 P.3d 367 (internal quotation marks and citation omitted). This doctrine "is to be strictly applied, and cannot be invoked if the record as a whole demonstrates that the defendant received a fair trial." *Id.* (text only) (citation omitted). As in *Carrillo*, because we find only one harmless error, there are no errors to aggregate. Since Defendant has provided us with no authority supporting cumulative error under such a circumstance, we assume no supporting authority exists. *See id.*; *see also State v. Atencio*, 2024-NMSC-022, ¶ 37, 557 P.3d 118 ("[W]here no authority is cited we may assume none exists."). Thus, Defendant is not entitled to relief under the cumulative error doctrine.

## II. CONCLUSION

**{16}** For the foregoing reasons, we affirm Defendant's convictions.

**{17}** **IT IS SO ORDERED.**

**JULIE J. VARGAS, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**