**Certiorari Denied, March 17, 2011, No. 32,865**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2011-NMCA-043**

**Filing Date: January 20, 2011**

**Docket No. 28,967**

**HESS CORPORATION,**

Plaintiff-Appellant,

**v.**

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Timothy L. Garcia, District Judge**

Holland & Hart, LLP
Bradford C. Berge
Michael H. Feldewert
Kristina Martinez
Santa Fe, NM

for Appellant

Jones, Snead, Wertheim & Wentworth, P.A.
Jerry Wertheim
Jerry Todd Wertheim
John V. Wertheim
Santa Fe, NM

for Appellee

**OPINION**

**CASTILLO, Judge.**

1

{1}    Appellant, the Hess Corporation (Hess), was a defendant in a class action lawsuit brought in federal district court by royalty interest owners who claimed that Hess suppressed the value of the carbon dioxide for which they received royalty payments. The class action lawsuit was settled, and Hess agreed to compensate the royalty interest owners. Thereafter, Respondent, the New Mexico Taxation and Revenue Department (the Department) issued Hess a severance tax assessment citing NMSA 1978, Section 7-29-4.3 (1985) as authority for the assessment. Hess paid the assessment in order to contest it and filed a refund claim in district court arguing that the Department lacked a statutory basis for the assessment. The district court rejected this argument, but nonetheless entered judgment making a partial refund to Hess on other grounds. We affirm.

## I.    BACKGROUND

{2}    From 1984 onward, Hess and other oil and gas companies have produced carbon dioxide from the Bravo Dome Carbon Dioxide Gas Unit in Northeastern New Mexico (the Bravo Dome Unit). The carbon dioxide produced from the Bravo Dome Unit is subject to severance taxes. Hess reported and paid its severance taxes on a monthly basis.

{3}    In 1995, a class action lawsuit styled *Feerer v. Amoco Production Co.*, No. 95-0012, 1998 U.S. Dist. Lexis 22248 (D.N.M. 1998) (the *Feerer* Litigation) was filed in the federal district court of New Mexico against Hess and other defendants engaged in carbon dioxide production at the Bravo Dome Unit. The class members were overriding royalty interest owners in the Bravo Dome Unit who alleged underpayment of royalties under the Bravo Dome Carbon Dioxide Gas Unit Agreement. The *Feerer* Litigation resulted in the *Feerer* Settlement Agreement (FSA) which was finalized and approved by the federal district court in 1998.

{4}    The FSA was memorialized in an opinion in which the federal district court set forth the terms of the FSA and assessed whether, under Federal Rule of Evidence 23(e), the terms of the FSA were fair. *Feerer*, 1998 U.S. Dist. Lexis 22248. Under paragraph eight of the FSA, Hess made a payment into the registry of the federal court in the amount of $8,500,000 dollars. Hess also agreed to "future relief" that involved changes to the manner in which Hess paid royalties.

{5}    In December 2004, the Department issued Hess a notice of assessment in which the Department claimed that, as a direct result of the FSA, Hess owed roughly eight million dollars in severance taxes. This included principal, interest, and penalties. The Department cited Section 7-29-4.3 as authority for the assessment and asserted that the FSA constituted a taxable event under this statute. The Department alleged that one of the claims underlying the litigation which led to the FSA was that Hess suppressed the value of carbon dioxide on which royalties were paid. Thus, according to the Department, the FSA established an increased taxable value for carbon dioxide gas severed in New Mexico that should have been reported to the Department.

{6}    Hess paid the assessment in order to halt the running of interest and perfect its right to pursue a full refund. Thereafter, Hess submitted an administrative refund claim, which was denied. Hess then filed a complaint in district court pursuant to the New Mexico tax refund statute, NMSA 1978, Section 7-1-26(C)(2) (2007).

{7}    The district court issued a pretrial order identifying the uncontroverted facts, the contested

facts, and the contested issues of law. The following is a summary of the pertinent portions of that order. At the time the federal court approved the FSA, the *Feerer* Litigation class's claims were comprised of seven allegations. Six of the seven allegations related to whether Hess made inappropriate deductions and charges in calculating royalty payments. The remaining allegation related to Hess's purported failure to achieve a reasonable sales price for the carbon dioxide produced from the Bravo Dome Unit. Thus, the allegations underlying the *Feerer* Litigation concerned both matters unrelated to Hess's alleged suppression of the price of carbon dioxide (non-price issues) as well as matters related to Hess's alleged suppression of the price of carbon dioxide (price issues). The Department's assessment was based on (1) the legal conclusion that, when pricing issues are litigated, the oil and gas statutes impose taxes on any increased value of product imputed by court-approved settlement and (2) on the factual assumption that Hess settled price claims through the FSA. The parties agree that Hess is not liable for additional severance taxes as a result of the non-price portion of the FSA. The Department's assessment was based on an allocation of the settlement proceeds between the price and non-price claims. Hess contested the Department's factual assumption that any portion of the FSA settlement proceeds related to price claims and contested the Department's legal conclusion that the federal district court's approval of the FSA constituted a finding or order by a court that increased the taxable value of a product at the production unit, giving rise to tax liabilities under Section 7-29-4.3.

{8}     Following a three-day bench trial, the district court entered its findings of fact and conclusions of law which were later amended. The district court's findings were, for the most part, a restatement of the parties' divergent positions concerning the nature of the FSA and whether Hess was liable for severance taxes under Section 7-29-4.3 as a result of the FSA. The district court did not expressly accept or discredit either party's version of the facts. Rather, the district court observed that, during the negotiations that led to the FSA, the parties failed to reach any allocation of the settlement proceeds as to the price versus non-price claims. The court then concluded that the FSA settled both price and non-price claims, that the Department's allocation of the settlement proceeds to the price versus non-price claims (eighty-one percent to price and nineteen percent to non-price) was not reasonably supported by the evidence, and that Hess's allocation (zero percent to price and one hundred percent to non-price) was also not reasonably supported by the evidence. The district court utilized a standard formula which equally allocated the settlement proceeds and found and concluded that a proper allocation of the proceeds was one-half to price and one-half to non-price.

{9}     Based on its findings and conclusions, the district court entered judgment refunding Hess a partial amount of the 2004 assessment. Of the original roughly $8,000,000 assessment, Hess was refunded $4,432,323 plus interest. The refund amounted to $6,550,973. The Department retained $1,516,629. Hess filed a timely notice of appeal.

## II.     DISCUSSION

{10}    On appeal, Hess asks that we vacate the district court's ruling and award Hess a full refund of the amounts paid under the assessment with interest from the date of payment. Hess's primary argument is that the FSA is "not the type of administrative or judicial event that triggers additional severance tax reporting and payment obligations under the plain language of Section 7-29-4.3." Alternatively, Hess contends that the assessment was barred by the controlling statute of limitations.

Finally, Hess raises a number of other arguments.  We address these issues in turn.

**A.**      **Section 7-29-4.3**

**{11}**     Section 7-29-4.3 reads as follows:

> When an increase in the value of any product is subject to the approval of any agency of the United States of America or the [S]tate of New Mexico or any court, the increased value shall be subject to this tax.  In the event the increase in value is disapproved, either in whole or in part, then the amount of tax which has been paid on the disapproved part of the value shall be considered excess tax.  Any person who has paid any such excess tax may apply for a refund of that excess tax in accordance with the provisions of Section 7-1-26.

Whether Section 7-29-4.3 provides a statutory basis for the assessment is a matter we review de novo. *TPL, Inc. v. N.M. Taxation & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447, 64 P.3d 474 ("[W]e review de novo a lower court or administrative agency's application of law to facts."). To the extent this inquiry requires us to interpret Section 7-29-4.3, our review is also de novo.  *TPL, Inc.*, 2003-NMSC-007, ¶ 10 ("[W]hen we are required to interpret the phrases within a statute, we are presented with a question of law, which we review de novo.").

**{12}**     Tax statutes, like any other statutes, "are to be interpreted in accordance with the legislative intent and in a manner that will not render the statutes' application absurd, unreasonable, or unjust." *Amoco Prod. Co. v. N.M. Taxation & Revenue Dep't*, 118 N.M. 72, 74, 878 P.2d 1021, 1023 (Ct. App. 1994).  "We look primarily to the language of the statute, and when the language is free from ambiguity, we will not resort to any other means of interpretation." *Kilmer v. Goodwin*, 2004-NMCA-122, ¶ 18, 136 N.M. 440, 99 P.3d 690.  "Where an ambiguity or doubt exists as to the meaning or applicability of a tax statute, it should be construed most strongly against the taxing authority and in favor of those taxed." *N.M. Elec. Serv. Co. v. Jones*, 80 N.M. 791, 793, 461 P.2d 924, 926 (Ct. App. 1969).  As a leading treatise on the subject instructs,

> in the interpretation of statutes relating to taxation, it is the established rule not to extend their provisions by implication beyond the clear import of the language used or to enlarge their operations so as to embrace matters not specifically pointed out and where there is doubt they are construed most strongly against the government and in favor of the citizen.

3A Norman J. Singer, *Sutherland Statutory Construction* § 66:2, at 19 (6th ed. 2003).

**{13}**     The Department based the tax assessment on the language of Section 7-29-4.3.  There is no case law construing the tax provision at issue in this case, nor has the Department had the opportunity to interpret the statute with regard to severance tax reporting and payment obligations on payors of court approved settlements.  Therefore, our review of Section 7-29-4.3 presents us with a question of first impression.

**{14}**     The pertinent portion of the statute provides that "[w]hen an increase in the value of any

4

product is subject to the approval of any agency of the United States of America or the [S]tate of New Mexico or any court, the increased value shall be subject to this tax." *Id.* "Value" as used in the phrase "taxable value" is defined as "the actual price received for products at the production unit, except as otherwise provided in the Oil and Gas Severance Tax Act." NMSA 1978, § 7-29-2(D) (2005). "'Actual price' means the money or other consideration received or accrued for the product . . . ." 3.18.1.7(A) NMAC (12/29/00). "[A] production unit is the wellhead and the equipment associated with the wellhead." 3.18.1.7(E) NMAC ; *see also* § 7-29-2(B) (defining "production unit" as "a unit of property designated by the department from which products of common ownership are severed"). Further, because there is no actual sale—or price received—at the wellhead, the State permits operators to calculate the taxable or wellhead value by deducting costs for compression, dehydration, gathering, and transportation from the downstream sales price received for the product. *See* § 7-29-4.2(C); *see also* 3.18.1.7(A) NMAC.

{15}    Like Section 7-29-4.3, the New Mexico Administrative Code similarly directs that severance taxes may be levied "[w]hen any agency of the United States of America or the [S]tate of New Mexico or any court issues an order and the effect of the order is to increase the taxable value of products previously reported." 3.18.7.8(A) NMAC. We note that this regulation, by its title—"Settlements; when tax on additional value is due"—necessarily contemplates that Section 7-29-4.3 applies to class action settlements like the one at issue. It is clear, therefore, that both Section 7-29-4.3 and the relevant provision of the administrative code impose severance tax obligations when a court or agency issues an order, and the effect of that order is to increase the value at the wellhead of products previously reported. We now turn to the parties' arguments.

{16}    The central issue in this case is whether the FSA constituted an order that increased the value of a product previously reported and which resulted in Hess accruing severance tax obligations under Section 7-29-4.3. Hess asserts that the FSA concerned a Fed. R. Civ. P. 23(e) NMRA motion to approve a class action royalty settlement and that, therefore, the FSA did not constitute an adjudicatory event where a court order increased the value of a product. The Department responds that Section 7-29-4.3 covers the settlement of royalty class actions that have value claims underlying them, that Hess did indeed accrue severance tax obligations under Section 7-29.4.3 as a result of the FSA, and that the district court properly applied the law in concluding that the FSA constituted a taxable event under this statute. The district court concluded that Hess was liable for severance taxes under Section 7-29-4.3 because Hess, by entering into the FSA, settled the price claim and failed to allocate the settlement proceeds. We agree with the Department and the district court.

{17}    Under the plain language of Section 7-29-4.3 and the corresponding regulations, we hold that a settlement of a royalty class action may constitute an adjudicatory event that results in an increased taxable value of products. There is no dispute that class actions brought pursuant to Fed. R. Civ. P. 23(e) are always subject to court approval. It is therefore reasonable and logical to conclude that the Legislature intended to include class action settlements that have underlying value claims as a type of judicial event that triggers additional severance tax reporting and payment obligations under Section 7-29-4.3.

{18}    In this case, the royalty owners in the class action had charged Hess with underpaying royalties both through non-price conduct and through price-related conduct. In settling the price claim, Hess settled the allegation that it suppressed the price of carbon dioxide produced from the

Bravo Dome Unit. In fact, the district court specifically found that the Department had determined "a substantial portion of the *Feerer* Settlement payments made by [Hess] were based upon the overall suppression of price." Thus, the proceeds of the settlement agreement were, in part, compensation provided to the royalty interest owners to account for the alleged failure to achieve a reasonable sales price for the product. Accordingly, we reject Hess's contention that Section 7-29-4.3 is inapplicable here because there is no express finding that the FSA increased the value of the carbon dioxide. The district court did make findings that there were price claims and non-price claims; that the parties did not allocate proceeds between these claims; that the assessments were based upon the overall suppression of price, thus decreasing the value of carbon dioxide produced at the Bravo Dome Unit; and, lastly, that the settlement proceeds would be allocated one-half to price claims and one-half to non-price claims. In effect, the district court determined that the proceeds of the FSA represented payment to the class for a portion of the value of carbon dioxide for which severance taxes had not been previously reported or paid. We conclude, therefore, that the district court correctly determined that the FSA constituted a taxable event under Section 7-29-4.3.

**{19}** In further support of its argument that Section 7-29-4.3 does not apply in this case, Hess contends that it cannot be subject to taxation under Section 7-29-4.3 because 3.18.7.8 NMAC states that only taxpayers who have received a payment or credit for a product previously reported may be liable for taxes under Section 7-29-4.3. Hess claims that it is not a taxpayer but a payor under the terms of the *Feerer* settlement. Specifically, Hess contends that because it did not receive a payment or credit, there was no corresponding severance tax reporting requirement or payment obligation. We disagree. Hess misinterprets the import of the regulation and fails to consider other pertinent provisions of the tax code.

**{20}** As the operator of the production unit, Hess is charged with the responsibility of determining the "taxable value" of the carbon dioxide it extracts. *See* NMSA 1978, § 7-29-4.1 (2005); NMSA 1978, § 7-29-6 (1958); NMSA 1978, § 7-29-7 (1986). Section 7-29-6 states that "[a]ny operator making a monetary payment to an interest owner for his portion of the value of products from a production unit shall withhold from such payment the amount of tax due from the interest owner." Pursuant to this statute, Hess was obligated not only to remit any severance taxes it may be liable for under Section 7-29-4.3, but was also obligated to remit any severance taxes owed by the royalty interest owners. And, because interest owners are liable for the tax to the extent of their interest in the product, Section 7-29-4(C), Hess must then withhold severance taxes to royalty interest owners "for [their] portion of the value of products from a production unit." Section 7-29-6. Based on these statutory provisions, we thus conclude that Hess is a taxpayer and was obligated to pay any severance taxes for which it may be liable, including taxes owed by the royalty interest owners.

**{21}** We disagree with Hess, for the reasons just described, that there is any ambiguity concerning the applicability of Section 7-29-4.3 here. We are similarly unpersuaded by Hess's contention that the Department was equitably estopped from issuing the assessment. "Courts are reluctant to apply equitable estoppel against a governmental entity." *Kilmer*, 2004-NMCA-122, ¶ 26. Hess directs us to cases describing the elements Hess was required to prove to succeed on its estoppel claim. Hess failed to discuss those elements in the context of the facts before us. We proceed to Hess's claim that the assessment is barred by the statute of limitations.

6

**B.      Statute of Limitations**

**{22}**      Hess argues that, even if we conclude that Section 7-29-4.3 provides the statutory grounds for the assessment, imposition of the assessment was nevertheless barred by the controlling statute of limitations, NMSA 1978, Section 7-1-18(A) (1994).  "We review de novo whether a particular statute of limitations applies." *Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 8, 132 N.M. 459, 50 P.3d 554.

**{23}**      With limited exceptions, the Department is required to issue tax assessments within three years from the end of the calendar year in which payment of a tax is due.  Section 7-1-18(A).  This statute of limitations is extended to seven years when a taxpayer fails to complete and file any required return.  Section 7-1-18(C).  The event triggering the assessment, the FSA, occurred in 1998.  The assessment was issued in 2004, well beyond the three-year window, but within seven years of the calendar year in which payment of the tax was due.  The issue is whether the Department may avail itself of the seven year extension established in Section 7-1-18(C).

**{24}**      "[T]he various extensions to the general three-year limitation on assessments . . . are intended to extend the time subject to assessment, depending on the circumstances under which a taxpayer has not paid taxes for which it was in fact liable." *Taxation & Revenue Dep't, State of N.M. v. Bien Mur Indian Mkt. Ctr.*, 108 N.M. 228, 230, 770 P.2d 873, 875 (1989).  "[T]heir application depends solely on objective facts and circumstances," here nonfiling. *Id.*  Their application "does not turn on the taxpayer's culpability." *Id.* (emphasis omitted).

**{25}**      The district court found that Hess "did not prepare or file any tax forms with the [Department] which identified or allocated any of the settlement payments (made in the *Feerer* Settlement) as additional amounts subject to severance tax liability owed to the State of New Mexico."  This finding is sufficient to support the conclusion that Section 7-1-18(C) controls here.  Hess was subject to severance taxes as a result of the FSA but failed to file a return of any kind.  Hess submits varying arguments why we should not adopt this conclusion.  These arguments fail to persuade us.

**{26}**      Hess appears to argue that Section 7-1-18(C) is inapplicable because Hess did not know that it was required to file a return and should not be held accountable for failing to do so.  As noted above, taxpayer culpability is not pertinent in deciding whether one of the exceptions to the three-year statute of limitations is applicable. *See Bien Mur Indian Mkt. Ctr.*, 108 N.M. at 230, 770 P.2d at 875.  Moreover, "tax statutes normally are such that the taxpayer has the obligation of self-declaration of any incident which has a tax consequence." *State v. Martin*, 90 N.M. 524, 526, 565 P.2d 1041, 1043 (Ct. App. 1977), *overruled on other grounds by State v. Wilson*, 116 N.M. 793, 867 P.2d 1175 (1994).  "Implicit in a requirement to self-declare is an obligation to assess one's tax obligation under applicable tax law." *Kinder Morgan CO2 Co. L.P. v. State Taxation & Revenue Dep't*, 2009-NMCA-019, ¶ 43, 145 N.M. 579, 203 P.3d 110.  We also observe that there was evidence that before the final settlement agreement was provided to the federal court, the parties to the FSA agreed to eliminate any reference to severance taxes in the FSA.  It appears the parties were at one time concerned about the assessment of severance taxes.

**{27}**      Hess also argues that it did not receive a payment or credit as a result of the FSA.  We fail

7

to see how this bears on the applicability of Section 7-1-18(C). While it is true that in virtually every taxable settlement, the taxpayer will receive a "payment or credit," Section 7-29-7 makes clear that it is the operator's obligation to file the report showing the value, volume and kind of product sold from the production unit. Consequently, as the operator, Hess was required to report any increased value resulting from the settlement.

{28}     Finally, Hess claims that "[a] dispute over the amount of the taxable value previously reported cannot constitute 'a failure by a taxpayer to complete and file any required return' for purposes of 7-1-18(C)." We fail to see why this is the case. The FSA was a taxable event under Section 7-29-4.3 for which Hess did not pay taxes. Accordingly, under Section 7-1-18(C), the statute of limitations is extended to seven years.

## C.     Hess's Additional Arguments

{29}     Hess raises six additional arguments. Five are based on lack of substantial evidence, and the sixth relates to the portion of settlement proceeds based on interest and expenses. "In accordance with the standard of review, when considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. Hess points out that, in the 2004 notice of assessment, the Department informed Hess that it had invoked its authority under NMSA 1978, Section 7-1-11(D) (2007), to use reasonable methods to estimate Hess's tax liability. Section 7-1-11(D) states that "[i]f the taxpayer's records and books of account do not exist or are insufficient to determine the taxpayer's tax liability, if any, the [D]epartment may use any reasonable method of estimating the tax liability." The Department explained in the assessment notice that it based its estimation of Hess's severance tax liability on the value of the FSA because it was unable to base that determination on Hess's records and books. Hess argues that the Department "failed to present evidence to substantiate a basis for invoking the 'reasonable methods' assessment authority." This argument fails.

{30}     The assessment was predicated on the factual assertion that Hess underrepresented the value of a previously reported taxable product. As such, it is logical that the Department would not look to Hess's records and books to reach a determination as to the true value of that product, but instead would invoke its authority under Section 7-1-11(D) and look to some other source for that information. The Department did so through the testimony of its expert who had relied on the damage allegations in the *Feerer* complaint, as well as the federal court's findings in approving the settlement.

{31}     Hess next claims that the district court's allocation of the settlement proceeds—one-half to the price claim and one-half to the non-price claims—is not supported by substantial evidence. The parties vigorously disputed how the settlement proceeds should be allocated. The Department, based on the testimony of its experts, asked the district court to allocate the proceeds eighty-one percent to the price claim and the remainder to the non-price claims. Hess submitted contrary evidence and asked the district court to allocate zero percent of the proceeds to the price claim and one hundred percent of the proceeds to the non-price claims. The district court rejected both parties' requests and allocated the proceeds evenly. We find no error in this determination.

**{32}** The district court expressly observed that at least one expert indicated that this was an appropriate allocation. The record confirms this observation. Mr. Valdene Severson, who identified himself as the oil and gas bureau chief of the Department's audit and compliance division, testified that he was asked to compute how the FSA proceeds should be allocated between the non-price claims and the price claim. Based on his calculations, Severson concluded that eighteen to fifty-two percent of the proceeds should be allocated to the non-price claims. Dr. John Tysseling, the Department's expert economist, testified that Severson's computation was reasonable and the result reached was "within a reasonable range."

**{33}** In light of this testimony, we cannot say that the district court's allocation is unsupported by substantial evidence. It is the "duty of the trier of the facts to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistent or contradictory statements, and say where the truth lies." *Jones v. Anderson*, 81 N.M. 423, 424, 467 P.2d 995, 996 (1970). The district court was provided conflicting expert testimony and a range of possible appropriate allocations. The district court concluded that allocating the proceeds between the two types of claims evenly was appropriate, and this determination was within the range provided by the experts. We conclude that the district court's allocation is supported by substantial evidence and reject Hess's arguments to the contrary. *See Kerr v. Schwartz*, 82 N.M. 63, 65, 475 P.2d 457, 459 (1970) ("[W]here findings of fact and conclusions of law flowing therefrom have substantial support of the evidence, they will not be disturbed on appeal.").

**{34}** Hess next asserts that, even if the district court's allocation is supported by substantial evidence, there is no evidence to demonstrate Hess accrued severance tax liabilities as a result of that allocation because the FSA concerned royalty payments. We reject this contention. As described in the preceding section of this opinion, the FSA settled the royalty interest owners' allegation that Hess was suppressing the true value of the carbon dioxide produced from the Bravo Dome Unit. The settlement of the price suppression claim provides the factual basis for the assessment under Section 7-29-4.3.

**{35}** Hess next argues that the district court erred in failing to account for interest that was built into the FSA. Hess observes that, in reaching the final settlement figure, the parties to the FSA included a fifteen percent interest rate for the eighteen years the FSA covered. Hess appears to be objecting to the fact that it is being required to pay severance taxes on interest. Hess fails to identify any authority that would require deduction of interest when determining Hess's severance tax liabilities under Section 7-29-4.3. Hess cites to *Forest v. C.I.R.*, 104 F.3d 348 (1st Cir. 1996), an unpublished federal district court decision, which holds that a portion of a settlement payment should be allocated to interest even though the general release was silent on the issue. We note that *Forest* not only does not address the issue of whether severance taxes must be paid on interest, but that decision is not binding on this Court. *Incorporated Cnty. of Los Alamos v. Montoya*, 108 N.M. 361, 364, 772 P.2d 891, 894 (Ct. App. 1989). As we have noted, an unpublished opinion is written solely for the benefit of the parties to the action and has no controlling precedential value. *State v. Gonzales*, 110 N.M. 218, 227, 794 P.2d 361, 370 (Ct. App. 1990).

**{36}** Hess next submits that the Department's assessment methodology was flawed and that the district court erred in relying on this methodology to calculate Hess's adjusted gross imputed tax value. Specifically, Hess contends that the district court wrongly adopted the Department's factual

assertion that ninety-six percent of the FSA class is comprised of one-eighth royalty interest owners. According to Hess, only nineteen percent of the FSA class is comprised of one-eighth royalty interest owners.

**{37}** Our review of the record reveals that both Severson and Dr. Tysseling addressed how the Department arrived at the ninety-six percent figure. Severson testified that the Department provided him with this figure and that he assumed this estimate was correct. That the district court accepted Severson's figures, and rejected Hess's evidence that the FSA class was comprised of only nineteen percent one-eighth royalty interest owners, does not prove error. "Resolution of factual conflicts, credibility, and weight is the task of the trial court." *State v. Roybal*, 115 N.M. 27, 29, 846 P.2d 333, 335 (Ct. App. 1992). We are unpersuaded that the district court erred in estimating Hess's adjusted gross imputed tax value.

**{38}** Finally, Hess contends that "there is no substantial evidence to support the issuance of [the] negligence penalty." The penalty was issued pursuant to NMSA 1978, Section 7-1-69 (2007), and amounted to approximately $390,000. The Department argues that there was indeed substantial evidence to support the penalty and points to evidence showing that the parties to the FSA agreed to eliminate any reference to severance taxes in the FSA so as to limit the parties' exposure to severance taxes. This is substantial evidence sufficient to support the negligence penalty. *See Gathings v. Bureau of Revenue*, 87 N.M. 334, 335, 533 P.2d 107, 108 (Ct. App. 1975) (explaining that the term negligence as used in Section 7-1-69 is properly equated with "lack of reasonable cause" (internal quotation marks and citation omitted)); *see also Arco Materials, Inc. v. Taxation & Revenue Dep't*, 118 N.M. 12, 16, 878 P.2d 330, 334 (Ct. App. 1994) (discussing Section 7-1-69 and observing that "New Mexico case law is clear that penalties may properly be assessed even when the failure to pay is based on inadvertent error or unintentional failure to pay the tax due"), *overruled on other grounds by Blaze Constr. Co., Inc. v. Taxation & Revenue Dep't*, 118 N.M. 647, 884 P.2d 803 (1994).

## V.    CONCLUSION

**{39}** Section 7-29-4.3 provides statutory grounds for the assessment, the assessment was not barred by the statute of limitations, and we are not persuaded by Hess's other varying objections to the ruling below. The district court's judgment partially refunding Hess is affirmed.

**{40}    IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *Hess Corp. v. N.M. Taxation & Revenue Dep't*, Docket No. 28,967**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-OG | Oil and Gas |
| NR-RO | Royalties |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| | |
| **TX** | **TAXATION** |
| TX-RF | Refund |
| TX-ST | Severance Tax |
| TX-TM | Time Limitations |