This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39641**

**JAMES P. BENVENUTI, M.D.,**

      Protestant-Appellant,

v.

**NEW MEXICO TAXATION &
REVENUE DEPARTMENT,**

      Respondent-Appellee,

**IN THE MATTER OF THE PROTEST
TO ASSESSMENT ISSUED UNDER
LETTER ID. NO. L0472790192.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE
Chris Romero, Hearing Officer**

James P. Benvenuti, M.D.
Albuquerque, NM

Pro Se Appellant

Hector H. Balderas, Attorney General
David Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** The Respondent New Mexico Taxation and Revenue Department (the Department) issued an assessment of gross receipts taxes, penalties, and interest owed by Protestant James Benvenuti, M.D. (Taxpayer) for a period beginning in 2013

and continuing through the end of 2016. Acting pro se, Taxpayer protested the assessment and now appeals the decision and order of the administrative hearing officer, who denied Taxpayer's protest. We affirm.

**BACKGROUND**

**{2}** Because Taxpayer does not appear to contest the hearing officer's factual findings, we rely on those findings to set forth the factual background for this appeal. Taxpayer is a licensed physician who provides behavioral health treatment for youth in New Mexico. Taxpayer had an agreement to provide services for Staff Care, Inc. (Staff Care), a "locum tenens staffing company." Staff Care paid Taxpayer an hourly rate based on time sheets that Taxpayer submitted to Staff Care, and Staff Care reported Taxpayer's income for each relevant year on Forms 1099-MISC. Beginning in 2013 and continuing through 2016—the four tax years at issue—Staff Care assigned Taxpayer to provide services to Open Skies Healthcare (Open Skies) as an independent contractor.

**{3}** Open Skies was a nonprofit organization that was designated by Optum Health New Mexico (Optum) to be "the district provider." Optum was the statewide managed care organization for New Mexico behavioral health contracts for Medicaid and Medicare services. Taxpayer understood that Open Skies' compensation was owed at least in part to a contractual association with Optum and that Open Skies received compensation from Medicaid and Medicare funds, as well as from the Children, Youth and Families Department. Taxpayer could not identify which government programs— "Medicare, Medicaid, or other sources"—funded any of the particular services that he provided nor could he explain how Staff Care was compensated for providing physicians to Open Skies. Taxpayer produced no contract or agreement with Open Skies or Optum, and had no access to any contracts between or among Staff Care, Open Skies, and Optum.

**{4}** During the time that he provided professional medical services in New Mexico, Taxpayer paid no gross receipts taxes and specifically, reported no gross receipts that were derived from his work as an independent contractor for Staff Care. In 2019 the Department identified a disparity between Taxpayer's reported federal income and the gross receipts reported to the Department on the "CRS" filing and issued a "Notice of Assessment of Taxes and Demand for Payment" letter to Taxpayer for the four-year period that he worked with Open Skies. Taxpayer protested the assessment. After a hearing, the hearing officer denied the protest. This appeal followed.

**DISCUSSION**

**{5}** In New Mexico, "it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax." NMSA 1978, § 7-9-5(A) (2002, amended 2019). The receipts from the wages or salaries of employees are exempt from gross receipts taxes. NMSA 1978, § 7-9-17 (1969). An independent contractor, however, is not an employee and must pay gross receipts taxes. *See Peisker v. Unemployment Comp. Comm'n*, 1941-NMSC-031, ¶ 9, 45 N.M. 307, 115 P.2d 62. Taxpayer admitted in the

hearing that he was an independent contractor, but nevertheless argues on appeal that his income from the services that he provided was deductible from gross receipts taxes and that the Department's assessment, including the penalties and interest, should be abated.

**{6}** We construe deductions strictly against the taxpayer, and the taxpayer must show a clear entitlement to the statutory deduction. *TPL, Inc. v. N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 9, 133 N.M. 447, 64 P.3d 474. Although we further presume "that the [d]epartment's assessment is correct," our review of the administrative agency's application of the law to the facts is de novo. *Id.* ¶ 10. Importantly, our de novo review does not mean that we determine whether the Department refuted Taxpayer's challenge to the assessment. Instead, we review de novo whether Taxpayer's arguments and evidence presented to the hearing officer rebutted the presumption that the Department's assessment was correct.

**{7}** We first consider Taxpayer's position that his services were deductible from gross receipts under NMSA 1978, Section 7-9-93 (2016, amended 2021)[1] and its corresponding regulations, and second address Taxpayer's abatement argument.

## I. Taxpayer Is Not Entitled to a Complete Deduction of Gross Receipts Under Section 7-9-93(A)

**{8}** Taxpayer seeks a tax deduction under Section 7-9-93(A), which states, "Receipts of a health care practitioner for commercial contract services or medicare part C services paid by a managed health care provider or health care insurer may be deducted from gross receipts if the services are within the scope of practice of the health care practitioner providing the service." The hearing officer determined that while Taxpayer is a health care practitioner, Taxpayer's only contract was with Staff Care, which is not a managed health care provider or health care insurer under Section 7-9-93. As a result, the hearing officer concluded that "Taxpayer did not rebut the statutory presumption of correctness that attached to the assessment . . . and the burden did not therefore shift to the Department to [establish again] the correctness of its assessment." On appeal, Taxpayer makes three broad arguments to support his position that he qualifies for the Section 7-9-93 deduction: (1) deductible receipts need only be "traceable" to a managed health care provider or insurer, (2) Taxpayer received payment from Staff Care as a third party claims administrator under 3.2.241.9 NMAC, and (3) Staff Care qualifies as an intermediary between Taxpayer and an insurer under 3.2.241.10 NMAC. For the reasons set forth below, we agree with the hearing officer that Taxpayer was not eligible for the deduction under Section 7-9-93.

## A. Receipts Deductible Under Section 7-9-93 Must Be Paid by a Managed Health Care Provider

---

[1]The hearing officer applied the 2016 version of the statute. Neither party contends this was error, and we, too, apply the 2016 version of the statute.

**{9}**     Taxpayer contends that the payments he received for providing medical services "are clearly traceable to payments by the State of New Mexico Health Care Insurer and MCO—*Optum Health, Inc.* (as well as clearly traceable to MCO Open Skies Healthcare) and so, clearly and unambiguously establish his right to the deduction from gross receipts under prior New Mexico Taxation & Revenue Department precedent for [Section] 7-9-93(A)." To support this traceability argument, Taxpayer points to a decision by an administrative hearing officer, *In re the Protest of All Medical Personnel Inc.* (*All Medical Personnel*), No. 17-35, 2017 WL 3586124 (N.M. Tax'n & Revenue Dep't, Aug. 8, 2017) (dec. & order), which Taxpayer refers to as the "VanDenzen precedent." Taxpayer argues that the hearing officer in the present case and the Department have presented no authority either reversing *All Medical Personnel* or refuting the "traceability" analysis. Therefore, Taxpayer contends that this Court should apply the administrative gloss construction to *All Medical Personnel*. This Court applies the administrative gloss doctrine to "give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." *Pub. Serv. Co. of N.M. v. N.M. Tax'n & Revenue Dep't*, 2007-NMCA-050, ¶ 41, 141 N.M. 520, 157 P.3d 85 (internal quotation marks and citation omitted). We conclude that *All Medical Personnel* (1) does not establish a consistent agency interpretation that would justify this Court applying the administrative gloss doctrine, and (2) does not clearly establish Taxpayer's right to the deduction. *See TPL, Inc.*, 2003-NMSC-007, ¶ 9.

**{10}**     In *All Medical Personnel*, the taxpayer argued that it was entitled to deduct its gross receipts under Section 7-9-93. 2017 WL 3586124 at *16. The facts presented in *All Medical Personnel* were different than in the present case—the taxpayer was a staffing agency that engaged employees who provided medical services to other entities. *Id.* at *2. The specific question in *All Medical Personnel* was the staffing agency's gross receipts tax liability. *Id.* at *1. In the present case, Taxpayer is an independent contractor working for a medical staffing agency, and Taxpayer, unlike the *All Medical Personnel* employees, had the obligation to pay gross receipts taxes. *See Peisker*, 1941-NMSC-031, ¶ 9 (noting that independent contractors are liable for gross receipts taxes); *see also* § 7-9-17 (setting forth the employee exemption). *All Medical Personnel* therefore provides little guidance for the tax liability of an independent contractor health care provider. *See Pub. Serv. Co.*, 2007-NMCA-050, ¶¶ 44-45 (refusing to apply the administrative gloss doctrine to a case that was not similar to a prior agency ruling).

**{11}**     We further are unpersuaded that *All Medical Personnel* establishes a "traceability" analysis as Taxpayer argues. The *All Medical Personnel* administrative hearing officer determined that the taxpayer had failed to meet its burden to establish that it was entitled to the deduction.

> A general assertion that [the t]axpayer provided staffing in the healthcare field and thus is entitled to the general healthcare services deduction is a far cry from establishing entitlement to this specific statutory deduction. [*The t]axpayer made no effort in this case to detail that its receipts were traceable to payments from a managed health care provider or health care

*insider, a requirement of Section 7-9-93.* Nor did [the t]axpayer make any effort to demonstrate that all of the employees at issue provided the services in question as health care practitioners, as required under the statutory deduction. In fact, [the t]axpayer acknowledged that not all of its staff were actual practitioners, but instead may have been support workers-clerical staff working in a health care facility. Given that [the t]axpayer bore that burden of establishing entitlement to the deduction, failure to present any such evidence on those statutory requirements means that [the t]axpayer is not entitled to the deduction under Section 7-9-93.

2017 WL 3586124 at *17 (emphases added). Taxpayer focuses only on the italicized language, but this single sentence, in this context, does not establish a rule that receipts are deductible so long as the health care provider's receipts are traceable to a managed health care provider or health care insurer as required by Section 7-9-93(A). Instead, the hearing officer in *All Medical Personnel* was focused on the taxpayer's failure to present evidence and considering Section 7-9-93, specifically observed that "[t]here is no general deduction" for all receipts that are attributable to the health care industry services. 2017 WL 3586124 at *16. Instead, "a taxpayer can only qualify for a deduction if they legally and factually meet each specific legal requirement[] of the specific deduction at issue." *Id.* We agree with this articulation of a taxpayer's burden and therefore turn to the "specific legal requirements" of Section 7-9-93(A). *See All Medical Personnel*, 2017 WL 3586124 at *16.

**{12}**     As we have noted, Section 7-9-93(A) permits the deduction of "[r]eceipts of a health care practitioner for commercial contract services or medicare part C services *paid by* a managed health care provider or health care insurer." (Emphasis added.) The statute requires a connection between the receipts the health care practitioner receives and the receipts that are paid by the managed health care provider or health care insurer. The receipts paid from Staff Care to Taxpayer for hourly invoices are the only receipts in the record. Thus, to qualify for the Section 7-9-93 deduction, Taxpayer must establish that the receipts he received from Staff Care were paid by a managed health care provider or health care insurer. Taxpayer could not offer evidence about how or by whom Staff Care was compensated for providing physicians to Open Skies. Absent this evidence, Taxpayer can only claim the deduction if he establishes that Staff Care is a managed health care provider or health care insurer and paid the receipts that he received.

**{13}**     Section 7-9-93(C) defines "managed health care provider," in relevant part, as an "individual practice association" or an "independent physician-provider organization." Section 7-9-93(C)(4)(c), (g). Taxpayer argues that Staff Care, who paid his receipts, was an "independent physician-provider organization."[2] Both Taxpayer and the

2Taxpayer does not argue that Staff Care was an "individual practice association" under Section 7-9-93(C)(4)(c). Taxpayer does argue that Staff Care was an "*independent* practice association," which is a term used in 3.2.241.10(A) NMAC (emphasis added). We address Taxpayer's 3.2.241.10 NMAC argument separately.

Department cite a Department publication for the definition of "independent physician-provider organization." The publication states, "Independent physician-provider organizations: These organizations are associations of individual physicians that provide services at a negotiated *per capita* rate, flat retainer fee or negotiated fee-for-service basis. Such an organization is one model of HMO managed care." N.M. Tax'n & Revenue Dep't, FYI-202, Gross Receipts Tax and Health Care Services, at 3 (Rev. July 2022). No evidence suggests that Staff Care itself is an "association[] of individual physicians." Staff Care is a staffing agency that temporarily places independent contractor physicians with medical providers. Staff Care therefore does not satisfy the criteria to be a managed health care provider by way of the "independent physician-provider organization" designation.

**B.     Staff Care Is Not a Third Party Claims Administrator**

**{14}**    Taxpayer next argues that he was entitled to the Section 7-9-93 deduction because he was paid by a third party claims administrator as provided for by 3.2.241.9 NMAC. According to 3.2.241.9 NMAC,

> [p]ayments by a third party claims administrator to a health care practitioner for health care services rendered by the practitioner within the scope of his or her practice and pursuant to a contract with a managed care company or a health insurer that are otherwise deductible under Section 7-9-93 . . . may be deducted from gross receipts. A third party claims administrator is an entity that processes health care claims and performs related business functions for a health plan.

We conclude that Taxpayer did not present evidence to establish that Staff Care was a third party claims administrator as defined by the plain language of 3.2.241.9 NMAC.[3] *See Hess Corp. v. N.M. Tax'n & Revenue Dep't*, 2011-NMCA-043, ¶¶ 12, 17, 149 N.M. 527, 252 P.3d 751 (looking "primarily to the language" of a statute and corresponding regulations and refusing to "resort to any other means of interpretation"). Taxpayer appears to argue that Staff Care was a third party claims administrator because Staff Care processed Taxpayer's time sheets, prepared Taxpayer's tax documents, and received Medicaid payment as an agent on his behalf. To be eligible for the Section 7-9-93 deduction under 3.2.241.9 NMAC, however, Taxpayer was required to show that Staff Care both (1) "processe[d] health care claims" *for a health plan*, and (2) "perform[ed] related business functions *for a health plan*." No evidence supports a conclusion that Staff Care performed these functions "for a health plan." As we have explained, Taxpayer could not establish any of Staff Care's business relationships apart from its relationship with Taxpayer and nothing suggests that Taxpayer was "a health plan." According to a plain reading of 3.2.241.9 NMAC, Staff Care is not a third party

---

3Taxpayer additionally cites NMSA 1978, Section 59A-12A-2(B) (2016) for the definition of "third party administrator" and argues that Staff Care satisfies the criteria. Taxpayer disregards, however, that this definition is found within the Insurance Code and is expressly limited to the Insurance Code. *See* § 59A-12A-2 (defining terms "[a]s used in Chapter 59A, Article 12A NMSA 1978"). Absent further explanation or argument, we consider the Insurance Code no further.

claims administrator, and Taxpayer has not demonstrated with this argument that he is "clearly entitled to the statutory deduction." *TPL, Inc.*, 2003-NMSC-007, ¶ 9.

## C. Staff Care Is Not an Intermediary Between Taxpayer and a Managed Health Care Provider Under 3.2.241.10 NMAC

**{15}** Taxpayer additionally argues that he was entitled to the deduction under 3.2.241.10(A) NMAC because Staff Care was an intermediary between a managed health care provider and the health care practitioner (Taxpayer). An "[i]ndependent practice association[] generally contract[s] with health care practitioners, other managed health care providers and health care insurers" and "acts as an administrative intermediary between health care practitioners and other managed health care providers and health care insurers." 3.2.241.10(A) NMAC. To deduct receipts under this provision,

> each health care practitioner contracted with the independent practice association must be qualified to receive reimbursement from each managed health care provider and health care insurer contracted with the independent practice association subject to limitations and a fee schedule established by the independent practice association and agreed to by both parties through their individual contracts with the independent practice association.

*Id.* Taxpayer relies on an example provided in the regulation, which states,

> [e]xample: A health care practitioner contracts with an independent practice association. The health care practitioner bills and receives payment through the independent practice association from a health care insurer that is also contracted with the independent practice association. The health care insurer is registered in New Mexico. Even though the health care practitioner does not have a direct contract with the health care insurer, he or she may deduct payments he or she receives for services that are otherwise deductible under Section 7-9-93 . . . because he or she has contracted with the independent practice association.

3.2.241.10(B) NMAC. Example B requires that the independent practice association, which Taxpayer argues is Staff Care, have a contract with a health care insurer. No evidence supports a contract between Staff Care and a health care insurer. We therefore reject Taxpayer's argument that he established that he is clearly entitled to a deduction under 3.2.214.10 NMAC.

**{16}** Taxpayer additionally argues that Staff Care is a managed health care provider because it has a certificate of malpractice insurance, citing *Baker v. Hedstrom*, 2013-NMSC-043, 309 P.3d 1047. The *Baker* Court, however, considered the scope of the term "health care providers" as it is used in the Medical Malpractice Act (MMA). *Baker*, 2013-NMSC-043, ¶ 1. We hesitate to apply the MMA definition of "health care providers"

that is set forth in *Baker* in part because *Baker*'s analysis carefully accounts for the specific language, history, and context of the Legislature's enactment of the MMA. 2013-NMSC-043, ¶¶ 14-21. Our Supreme Court explained that a "major purpose of the [MMA] was to meet a perceived insurance crisis." *Id.* ¶ 16 (internal quotation marks and citation omitted). On the other hand, the purpose of the Gross Receipts and Compensating Tax Act, in which Section 7-9-93 is found, is to

> provide revenue for public purposes by levying a tax on the privilege of engaging in certain activities within New Mexico and to protect New Mexico businessmen from the unfair competition that would otherwise result from the importation into the state of property without payment of a similar tax.

NMSA 1978, § 7-9-2 (1966). *Baker*'s analysis, grounded in the MMA's specific legislative purpose, does not necessarily inform our reading of a similar term in a different statute when that statute has a completely different purpose. In the present case, we do not evaluate whether Staff Care is a health care provider under the MMA. Instead, we consider whether Taxpayer is entitled to a tax deduction under Section 7-9-93. As a result, the *Baker* analysis, which relied on the unique history and nature of the MMA, is of little assistance.

**{17}** As we noted at the outset, the burden is Taxpayer's to establish he was "clearly entitled" to the Section 7-9-93 deduction. *See TPL, Inc.*, 2003-NMSC-007, ¶ 9. To do this, Taxpayer had to provide evidence that his receipts as a health care provider were paid by a managed health care provider or health insurer. *See id.* ¶ 31 (holding that the taxpayer met its burden to prove it was entitled to the deduction with evidence relating to the elements required for the deduction). Only if Taxpayer provided evidence to support the deduction was the Department required to offer "some affirmative evidence" supporting its assessment. *See id.* Having carefully considered Taxpayer's arguments and the administrative record, we conclude that Taxpayer did not meet the burden to establish he was clearly entitled to the deduction. Accordingly, we affirm the hearing officer's decision.

## II. The Penalty Assessment Was Proper Absent Competent Evidence Negating an Inference of Negligence

**{18}** Taxpayer last seeks abatement of the Department's penalty assessment because (1) "the Department's decision to assess Taxpayer [is] so materially out of compliance with statutory requirements as to invalidate it"; and (2) Taxpayer was not negligent and acted in good faith. We do not consider Taxpayer's first argument because as we have explained, Taxpayer did not meet his burden to refute the Department's assessment. We turn then to Taxpayer's second argument.

**{19}** The hearing officer determined that abatement of the assessment was not permitted according to NMSA 1978, Section 7-1-69 (2007, amended 2021) or excusable under 3.1.11.11 NMAC. Section 7-1-69(A) provides that a penalty "shall be added to the

amount assessed" if the taxpayer's failure to pay is "due to the negligence or disregard of department rules and regulations, but without intent to evade or defeat a tax." Under Section 7-1-69(B), however, "[n]o penalty shall be assessed against a taxpayer if the failure to pay an amount of tax when due results from a mistake of law made in good faith and on reasonable grounds." The accompanying regulation defines negligence as (1) "failure to exercise that degree of ordinary business care and prudence which reasonable taxpayers would exercise under like circumstances"; (2) "inaction by taxpayers where action is required"; (3) "inadvertence, indifference, thoughtlessness, carelessness, erroneous belief or inattention." 3.1.11.10 NMAC. The regulation further sets out "indications of nonnegligence" and situations in which "a taxpayer has not been negligent," including if "the taxpayer proves that the failure to pay tax or to file a return was caused by reasonable reliance on the advice of competent tax counsel or accountant as to the taxpayer's liability after full disclosure of all relevant facts." 3.1.11.11(D) NMAC.

**{20}**     The hearing officer found that Taxpayer failed to report and pay gross receipts, had no reasonable grounds to justify not paying the tax, and did not exercise diligence by relying on tax preparation software or an attorney publication. On appeal, Taxpayer contends that he (1) did not fail to report his receipts because the Department had his information, (2) did not know how to report the various sources of his income, (3) relied on tax preparation software, (4) reported other receipts, and (5) was engaged in "diligent protest." We cannot agree.

**{21}**     When Taxpayer contends that the Department had his information, he refers to his own statements, federal and state income tax returns, the 1099-MISC forms issued by Staff Care, and a screen shot indicating electronically processed gross receipts returns. It is undisputed, however, that Taxpayer's gross receipts returns reported zero receipts. It was only through a comparison between federal filings and the CRS reports that the Department learned that Taxpayer had not reported his gross receipts in the CRS filing. No evidence suggested that Taxpayer reached out to the Department before he determined that his receipts were entirely deductible or before filing returns indicating zero receipts. *See El Centro Villa Nursing Ctr. v. N.M. Tax'n & Revenue Dep't*, 1989-NMCA-070, ¶ 7, 108 N.M. 795, 779 P.2d 982 (finding no reasonable cause for failing to pay the tax in part based on the taxpayer's failure to inquire). In order to demonstrate "nonnegligence" by reliance on advice, the taxpayer must prove the reliance was reasonable and that "all relevant facts" were fully disclosed to the advisor. 3.1.11.11(D) NMAC. Taxpayer did not present evidence that he input all of the relevant facts into the tax preparation software or that the tax preparation software he used would have calculated any gross receipts taxes due.

**{22}**     Taxpayer last argues that he was engaged in "diligent protest" and therefore, not negligent. "A taxpayer's mere belief that he is not liable to pay taxes is tantamount to negligence within the meaning of the statute and invocation of the penalty is appropriate." *C&D Trailer Sales v. N.M. Tax'n & Revenue Dep't*, 1979-NMCA-151, ¶ 8, 93 N.M. 697, 604 P.2d 835. Nevertheless, if a "taxpayer's failure to pay taxes is the result of a 'diligent protest,' and his decision to challenge the tax is based on informed

consultation and advice (i.e.[,] from his attorney or accountant), the taxpayer negates any inference of negligence and the application of the above-cited penalty provision is inappropriate." *Id.* Taxpayer did not seek "informed consultation and advice." No evidence shows that he consulted with an attorney or an accountant—or the Department—before filing returns reflecting no gross receipts. To the extent that Taxpayer used tax preparation software and relied on an attorney publication, those sources were not aware of Taxpayer's specific circumstances in a manner that permitted "informed consultation and advice." We therefore must reject Taxpayer's "diligent protest" argument.

{23}    To avoid the penalty and overcome the presumption that the Department's assessment was correct, Taxpayer was obligated to prove that he was not negligent. Taxpayer was unable to do so. As a result, the penalty under Section 7-1-69(A) was appropriately assessed.

**CONCLUSION**

{24}    For the reasons stated herein, we affirm.

{25}    **IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**